## HARTMAN *v.* BUTTERFIELD LUMBER COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 44.    Argued November 7, 1905.—Decided November 27, 1905.

A homesteader, after obtaining his patent, conveyed to a lumber company all the standing timber on the land and other rights therein pursuant to a contract made prior to the issuing of the patent; subsequently he conveyed all his interest in the land to one who thereupon claimed the timber on the ground that the prior conveyance was void as violative of the land laws and land policy of the United States. *Held*, that:

When the patent issues to a homesteader the full legal title passes to the patentee and he may do with the land that which he sees fit.

An executed contract, voluntarily executed, without fraud or duress, is binding and cannot be repudiated by the party who executed it, and one whose interest in land is acquired subsequently to a conveyance thereof by the owner has no higher right to question the conveyance than the grantor had.

Although the grantee of the timber might not have been able to enforce the contract because void as made in violation of the land laws of the United States, the conveyance having been voluntarily made after the issuing of the patent, could not be attacked on that ground by the grantor or his subsequent grantee. Whether the Government itself could challenge the conveyance not decided.

IN December, 1892, Esau Harness received a patent from the United States for 160 acres of land in Lincoln County, Mississippi. On January 28, 1893, he conveyed to the Norwood and Butterfield Company all the pine timber on the land "and a right of way through and across the land for roads, trams or railroads 100 feet wide." This instrument was filed

for record February 10, and the complainant below (defendant in error here) subsequently obtained a deed from the Norwood and Butterfield Company. On January 30, 1893, the patentee conveyed his entire interest in the land as security for supplies and merchandise to be furnished by Hartman, the plaintiff in error (defendant below), during the year 1893. This deed was filed for record January 31, 1893. On December 14, 1894, the trustee therein named sold and conveyed the land to Hartman.

This suit was brought in the Chancery Court of Lincoln County, Mississippi, to establish the prior right of the complainant to the timber and right of way. The bill charged that the defendant had actual notice of the conveyance from the patentee to the Norwood and Butterfield Company when he accepted the trust deed from the patentee, and therefore that he was subordinated in right to those claiming under the first conveyance, although it was not placed on record until after the execution and record of the deed of trust. It appeared in the testimony that prior to the patent the patentee had contracted with the Norwood and Butterfield Company to convey to it the timber and right of way. He himself testified that he had made such a contract, both before and after he had received the patent. The Supreme Court of the State, deciding in favor of the complainant, 82 Mississippi, 494, considered the effect of the contract made before the patent upon the validity of the subsequent conveyance to the Norwood and Butterfield Company, saying:

"We are driven to the conclusion that the decree of the court below must have been the result of an opinion that the agreement between Esau Harness and the grantor of appellant that, in consideration of the advance money to perfect his homestead entry and get his patent, Esau would sell the timber on the land in controversy, was against the public policy and void, and made void also the subsequent sale of the timber to reimburse for that advance. We are not in accord with that view. Rev. Stat. U. S. §§ 2290, 2291, 2296 (U. S. Comp. St. 1901, pp.

1389, 1390, 1398), with Gould & Tucker's notes, vol. 1, p. 537. On the testimony we cannot escape the conviction that the appellee had such notice as should put any reasonable man on inquiry, which would have disclosed the existence of the conveyance of the timber and right of way by Esau to the grantor of appellants.

"Reversed, and decree here in accordance with the prayer of the bill."

*Mr. P. Z. Jones* for plaintiff in error.

*Mr. Holmes Conrad* for defendant in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

For the purposes of this case it may be conceded that the contract made before the patent was, by virtue of the policy of the United States as disclosed in its statutes, void, and could not have been enforced by the Norwood and Butterfield Company, but the contract was not inherently vicious or immoral. It was simply void because in conflict with the Federal statutes. *Anderson* v. *Carkins*, 135 U. S. 483. When the patent issued the full legal title passed to the patentee. He could do with the land that which he saw fit, sell or give it away, and if he voluntarily conveyed it he could not thereafter repudiate the conveyance. He may well have thought that having received money from the company to enable him to pay for the land it was equitable that he should convey that interest which he had agreed to convey. At any rate, he had a right to exercise a choice in the matter, and having exercised it he at least cannot complain. Whether the Government could challenge the conveyance we need not determine, for if it had any right to interfere, it has not chosen to do so. It is generally true that an executed contract, voluntarily executed, without fraud or duress, is binding and cannot be repudiated by the party who executed it. In *Bibb* v. *Allen*, 149 U. S. 481, 497, Mr. Justice Jackson, speaking for the court, thus stated the law:

"It is well settled by the authorities that the defense of the statute of frauds cannot be set up against an executed contract. *Dodge.* v. *Crandall,* 30 N. Y. 294, 304; *Brown* v. *Farmers' Loan & Trust Company,* 117 N. Y. 266, 273; *Madden* v. *Floyd,* 69 Alabama, 221, 225; *Gordon, Rankin & Co.* v. *Tweedy,* 71 Alabama, 202, 214; *Huntley* v. *Huntley,* 114 U. S. 394, 400; Browne on Statute of Frauds, § 116. This rule proceeds and rests upon the principle that there is 'no rule of law which prevents a party from performing a promise which could not be legally enforced, or which will permit a party, morally but not legally bound to do a certain act or thing, upon the act or thing being done, to recall it to the prejudice of the promisee, on the plea that the promise, while still executory, could not by reason of some technical rule of law have been enforced by action.' *Newman* v. *Nellis,* 97 N. Y. 285, 291." *St. Louis Hay &c. Co.* v. *United States,* 191 U. S. 159, 163.

It is also well settled that one whose interest in land is acquired subsequently to a conveyance thereof by the owner has no higher right to question the conveyance than the grantor had. This does not conflict with the rule that a conveyance fraudulent against creditors may be set aside at their instance; for their rights exist prior to the conveyance, or if not, the conveyance was made with the purpose on the part of the grantor of defrauding them out of debts subsequently contracted. Nothing of that kind appears here. Hartman, at the time of the conveyance, had no claim against the patentee. The conveyance was not made with the purpose of subsequently contracting a debt and defrauding him out of payment thereof. His trust deed was executed after the conveyance to the Norwood and Butterfield Company and for the purpose of securing debts thereafter to be contracted, and he took with knowledge of the conveyance.

The judgment of the Supreme Court of Mississippi was right, and it is

*Affirmed.*

MR. JUSTICE WHITE, dissenting.

The reasons for my dissent are stated, not only because of what seems to me is the encouragement afforded to frauds on the homestead law by the ruling now made, but also because of the possible injurious consequences to arise from the application hereafter of the assumed legal principles upon which the ruling is based.

These are the facts: Harness entered the homestead. Before he had performed the conditions required by the law of the United States to entitle him to a patent, he made a contract with the Norwood and Butterfield Company, to convey to them, when he received a patent, the pine timber on the land and a right of way through and across the land for roads, trams or railroads one hundred feet wide. Harness ultimately filed the proofs required by the acts of Congress; in other words, made an affidavit, as required by law, to the effect that he had the sole interest in the land, and that there was an absence of interest in anybody else. Obtaining the patent, he made the stipulated conveyance to the Norwood and Butterfield Company, which afterwards conveyed to the Butterfield Lumber Company, defendant in error. Before this deed, however, was recorded, as required by the laws of Mississippi, Harness mortgaged the land to Hartman, plaintiff in error, and the mortgage was at once recorded. Thereafter the deed was recorded. Soon afterward the Butterfield Company filed its bill in a court of chancery in Mississippi to establish its alleged prior rights under the deed from Harness, and it was averred that Hartman accepted the mortgage to him with notice of the prior transfer, and therefore took subject to the deed.

That a Federal question was present is conceded, in view of the fact that the Mississippi court applied the laws of the United States in determining the validity of the contract and the deed. Having decided that they were valid, and that Hartman had notice of the transaction before the execution of the mortgage, the state court further held that the rights

of Hartman were subordinate to those conferred by the contract and deed. I do not stop to demonstrate that a contract made by a homesteader to convey to another, when a patent is obtained, a right to strip the land of all the timber and to vest in such party a right of way for a tramway to make the removal of the timber effectual, is void under the homestead laws of the United States. This I do not feel called upon to do, because the court in deciding this case expressly assumes that the contract to convey the timber was void, and bases its ruling upon that assumption, citing *Anderson* v. *Carkins*, 135 U. S. 483. But at the same time it is declared that although the contract was void, by virtue of the policy of the United States as disclosed in its statutes, such contract was not inherently vicious or immoral. The deduction seems to me to be unwarranted. Considering a contract of this nature, in *Anderson* v. *Carkins*, it was said:

"There can be no question that this contract contemplated perjury on the part of Anderson, and was designed to thwart the policy of the Government in the homestead laws, to secure for the benefit of the homesteader the exclusive benefit of his homestead right. Such a contract is against public policy, and will not be enforced in a court of equity."

And the doctrine of *Anderson* v. *Carkins*, which is conceded applies to this case, was reiterated in *Adams* v. *Church*, 193 U. S. 510, 515.

It having been impossible for the homesteader, without fraud and perjury, to execute the contract to strip the land of its timber and give a right of way for a tramway to make the stripping effectual, it seems to me that it cannot be said that it was not immoral and vicious. And when the necessary effect of the contract is thus fixed, it is submitted that it becomes at once patent that decisions holding that executed contracts are not affected by the statute of frauds have no application to this case, for, as said by Mr. Justice Jackson, in the case relied upon to demonstrate the doctrine, *Bibb* v. *Allen*, 149 U. S. 481, 497, "contracts not in conformity

with the statute (of frauds) are only voidable and not illegal."

It is said, however, that Harness made a deed in accordance with the contract, and this suit involves not the contract but the deed. But unless this proceeds upon the assumption that the contract was merely voidable and not illegal, as being contrary to public policy, it seems to me to be a plain misconception. This is said, since it cannot be that a court of equity will not enforce the specific performance of a contract which is void as against public policy, but yet will lend its aid to one of the parties by enforcing a deed which permits the fruits of the void contract to be realized.

As said in *Deweese* v. *Reinhard*, 165 U. S. 386, a case concerning the homestead laws:

"A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."

And especially must this be true where, as here, one of the parties to an illegal and void transaction invokes the aid of equity to give efficacy to perjury and a violation of public policy.

But it is asserted that whatever may be the right of the United States to assail the conveyance in question, neither the grantor nor his assignee has such right. Here, again, it seems to me clear that the distinction has been lost sight of which exists between contracts which are merely voidable and those which are void because contrary to public policy. That in a case of the latter character either party to the unlawful transaction or those in privity with them may be heard to contest the right of one of the wrongdoers to the active aid of a court of equity in making the illegal act effective, has long since been decided by this court. *Harkness* v. *Underhill*, 1 Black, 316, 325.

I therefore dissent.