## McKEEVER v. CARTER *et al.*

No. 5925.     Opinion Filed April 11, 1916.

(157 Pac. 56.)

1. **INDIANS—Void Deed—Tender of Consideration—Action by Minor Allottee.** In an action by a minor Creek freedman allottee to set aside a void deed to his allotted lands, it is not necessary to plead a formal tender or offer to return the consideration thereof as a condition precedent to maintaining an action for the cancellation of such void conveyance.

2. **INDIANS—Allotment to Creek Freedman—Alienation—Removal of Restrictions.** All restrictions against the alienation of the

allotted lands of a minor Creek freedman. except that of minority, were removed by Act Cong. May 27, 1908, c. 199, 35 Stat. 312.

3.  **SAME.** The provision of section 5 of Act Cong. May 27, 1908, c. 199, 35 Stat. 313, "That any attempted alienation or incumbrance, by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to the removal of the restrictions therefrom, and also any lease of such restricted lands made in violation of law or after the approval of this act, shall be absolutely null and void," does not affect a deed made after all restrictions upon the alienation of the lands therein described were removed.

4.  **CONTRACTS—Infants—Competency of Contracting Party—Presumption—Infancy.** Where nothing appears to the contrary, persons entering into an agreement are presumed to be adults and competent to contract, and one relying upon his infancy to defeat his act, contract, or deed has the burden of proving such fact.

5.  **DEEDS—Cancellation—Grounds—Inadequacy of Consideration.** Inadequacy of consideration alone is not sufficient to justify a court of equity in setting aside a deed regularly executed.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;
Wade S. Stanfield, Judge.*

Action by Junius Carter, by John Carter, as next friend, against Dan McKeever. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*W. C. Franklin* and *P. J. Casey,* for plaintiff in error.

*McCrory & Johns,* for defendants in error.

HARDY, J.  On July 25, 1911, John Carter, as next friend of Junius Carter, a minor, filed a petition in the district court of Okmulgee county seeking to quiet plaintiff's title in and to certain lands allotted by him as a Creek freedman and to have certain conveyances thereto canceled. On August 21, 1911, plaintiff in error filed his separate answer, joining issue with the allegations of

the petition, and by way of cross-petition asserted title in himself to said premises by virtue of certain deeds executed by plaintiff to defendant. Plaintiff filed answer to this cross-petition, alleging, among other things, that he was a minor at the date of said deeds. Demurrer to this answer was filed and overruled, and trial was had on the 6th day of December, 1912, when judgment was rendered in favor of plaintiff quieting his title in and to the premises. Defendant McKeever filed motion for new trial within time, which on the 28th day of June, 1913, was overruled, and exceptions allowed, and defendant brings the case here. Error is assigned upon the action of the court in overruling the demurrer to plaintiff's answer to the cross-petition.

The answer is alleged to be defective in that it does not plead an offer by plaintiff to restore the consideration received by him for the deed in question, and pleads no excuse or reason why same should not be done; and in support of this contention section 986, Rev. Laws 1910, regulating rescission of contracts, is cited, and it is said that this statute has not been complied with. This court has repeatedly held that a deed executed by an Indian or freedman minor to his allotted lands is void, and that it is not necessary to plead a formal tender or offer to return the consideration as a condition precedent to maintaining an action for the cancellation of such void conveyance. *Stevens v. Elliott,* 30 Okla. 41, 118 Pac. 407; *Tirey v. Darneal,* 37 Okla. 606, 133 Pac. 614; *Gill et al. v. Haggerty et al.,* 32 Okla. 407, 122 Pac. 641; *Collins Inv. Co. v. Beard,* 46 Okla. 310, 148 Pac. 846; *Bell v. Fitzpatrick,* 53 Okla. ——, 157 Pac. 334. There was no error in overruling the demurrer.

The remaining question urged is that the judgment is not supported by the evidence. The census card showing the enrollment of plaintiff was introduced, and it appears therefrom that plaintiff was eight years of age upon the date of his enrollment, and in the lower right-hand corner of the census card appears this notation: "Enrolled August, 1898." There is nothing else in the record to show the date of enrollment, and this is all the evidence as to the age of plaintiff. Defendant's first deed was dated August 1, 1911, and again on August 9, and August 31, 1911, he took other deeds. It appears from the evidence that on July 1, 1911, there was filed before a justice of the peace of Muskogee county a complaint charging plaintiff with the crime of obtaining money under false pretenses, and warrant was issued thereon and placed in the hands of an officer for service. Defendant was city marshal of the town of Boynton, and also held the office of constable. Negotiations had been pending between the parties for the purchase of plaintiff's land by defendant; one Jim Durant, brother-in-law of plaintiff, acting as go-between. Certain other persons in Muskogee had been trying to acquire plaintiff's lands, and, after a consultation between plaintiff, defendant, and Durant, it was agreed that plaintiff should leave the community; the purpose of his departure being in dispute. Plaintiff and defendant left Boynton July 9th and went to various points in Oklahoma, Missouri, and Iowa, returning to Kingfisher August 1st. Upon arriving at Kingfisher defendant informed plaintiff he was of age and could make a deed to his land, which was executed that day, and the parties immediately returned to Boynton. August 3d plaintiff was arrested, and defendant made bond for his appearance. Thereafter the parties went to

Muskogee, and upon payment of $65 in settlement of the amount claimed to the prosecuting witness he refused to prosecute further, and a dismissal of the criminal complaint was entered. Defendant is not shown to have had any connection with the criminal prosecution, nor is any agreement to dismiss upon payment of said sum shown.

Upon these facts the court found that defendant did not come into court with clean hands, and that each and all of his deeds were obtained by him under circumstances and conditions and for considerations contrary to public policy. The sufficiency of the evidence to support these findings is challenged. The fact that the parties entered into an agreement for the sale of said lands while plaintiff was a minor would not render void a deed made by plaintiff upon sufficient consideration after attaining his majority, if otherwise legal and valid.

Plaintiff was a Creek freedman, and all restrictions other than that of minority, were removed from his lands by the act of Congress approved April 21, 1904 (33 Stat. L. 189, c. 1402), which provided:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed."

The deeds in question all bearing date after the passage and approval of the act of Congress of May 27, 1908, the only restrictions existing at the date of said deeds were such restrictions as were imposed, if any, by the act of Congress of May 27, 1908. Said latter act provides in section 1 as follows:

"That from and after 60 days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the five civilized tribes, shall, as regards restriction on alienation or encumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed Indians having less than half Indian blood, including minors, shall be free from all restrictions."

By section 2 of said act it is provided:

"That the jurisdiction of the probate courts of the State of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors as used in this act shall include all males under the age of 21 years and all females under the age of 18 years."

Prior to the passage of this act there had been no uniformity in the restrictions upon alienation of the lands of allottees of the different tribes, and it was evidently the intention of Congress in the passage of this act to establish a uniform system applicable to all of the Five Civilized Tribes, and to substitute the provisions of the act of May 27, 1908, for the provisions of the previous act of April 26, 1906 (34 Stat. 137, c. 1876), and other legislation of like character affecting the lands of said allottees; and the passage of the act of May 27, 1908, operated as a repeal of former laws on the same subject. *MaHarry v. Eatman*, 29 Okla. 46, 116 Pac. 935; *Lewis v. Allen et al.*, 42 Okla. 584, 142 Pac. 384; *Henley v. Davis*, 156 Pac. 337, not yet officially reported.

This being true, the only restrictions upon the alienation of plaintiff's lands were those of minority contained in the act of May 27, 1908. By section 5 of that act it was provided:

"That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to the removal of restrictions therefrom, and also any lease of such restricted lands made in violation of law before or after the approval of this act shall be absolutely null and void."

By this provision any deed or contract to sell made before the removal of restrictions would be void, and in case of a contract to sell specific performance would be denied. But this does not necessarily mean that after the allottee has attained his majority, where all restrictions have been removed, he may not then upon sufficient consideration execute a valid conveyance to his allotted lands. The language of section 5 of the act of May 27, 1908, which, as we have seen, was intended as a repeal of the act of April 26, 1906, is different from the language used in the act of 1906. Turning to section 19 of the act of April 26, 1906, we find that:

"Every deed executed before or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby, declared void."

By the language of this section a deed made after the removal of restrictions, if made in pursuance of an agreement entered into before the removal of such restrictions, is void. The act of May 27, 1908, contains no such language, as will be seen from the section quoted *supra*, but simply enacts that all attempted alienations and contracts to sell, entered into before removal of restrictions, are declared void. There is no prohibition against selling after restrictions are removed.

In *Lewis v. Allen,* 42 Okla. 584, 142 Pac. 384, plaintiff was a Chickasaw allottee who had attempted during her minority to convey her allotted lands. Upon attaining her majority she executed a deed to her former grantee conveying the same land. She then instituted suit to cancel the second deed upon the ground that it was executed to supplement the first void deed, and upon the additional ground that the consideration was inadequate, and that the said deed was made before the dissolution of the tribal government, for a consideration less than the appraised value, and was void. These contentions were denied, and the court in discussing the facts said:

"Mrs. Lewis knew at the time she entered into the contract for the second deed, and also at the time of executing this deed, that she had taken $4,400 of Allen's money for a void deed; that she and her husband had spent this money, and that she still held the legal title to the land; that she was in need of funds to assist her husband out of trouble, and she wanted to help him; that she was under no legal obligation to give the second deed, but that by doing so she could get money to relieve her pressing necessities, and at the same time discharge a moral obligation imposed upon her by the circumstances connected with the first deed. The jury had a right to, and doubtless did, take all these things into consideration in finding that the $500 was an adequate consideration for the second deed."

And, after quoting from the case of *Hartman v. Butterfield Lumber Co.,* 199 U. S. 335, 26 Sup. Ct. 63, 50 L. Ed. 217, the court continues:

"We do not know what weight or influence the moral obligation had as an inducing cause in prompting Mrs. Lewis to enter into the contract for the deed and in performing this contract; but after the delivery of the

deed it then became a legal and binding conveyance, and the court below was right in so holding."

A similar question was presented in *Casey v. Bingham et al.*, 37 Okla. 484, 132 Pac. 663, where the plaintiff brought ejectment to recover certain lands which had been conveyed by him after the passage of the act of Congress of April 21, 1904, and before the passage of the act of April 26, 1906. It appears that on May 11, 1904, and before filing on the land in controversy, plaintiff had entered into a written contract with one Lewis by the terms of which he agreed to file on the land as soon as his enrollment was approved, and to convey same to said Lewis for a consideration of $2,000. One hundred and fifty dollars was paid him at the time of making the contract, and the balance was to be paid on execution and delivery of the deed. Plaintiff filed on the land, and on the 18th day of June executed a deed conveying same to Lewis, who paid him the balance of the $2,000. Plaintiff contended that the contract of May 11, 1904, to convey the land was illegal and void, and that, as the deed of June 18th was executed in pursuance of this illegal agreement, it was tainted with the same illegality, and was therefore void, and did not operate to convey the land. The court held the deed to be valid inasmuch as the same was executed after the land had been filed upon, and after all of the restrictions upon the alienation thereof had been removed by act of Congress of April 21, 1904 (33 Stat. L. 189). In the opinion the court said:

"In this case the restrictions were off the land by the express provisions of the act of April 21, 1904, quoted above. The plaintiff could sell the land. The statute as to this land gave him power to sell. The contract that he made before filing, while executed in part, had not been completed, and the plaintiff had the right to refuse

to complete it. If he had refused to make the deed, he could not have been compelled to do so; but he made the deed. The consideration he received at the time he made the deed was doubtless the main, if not the only, incentive which caused him to make it. The consideration then paid was considerably more than the appraised value of the land. A deed made at the time this one was made, for the consideration then paid, would doubtless have been good. Is the fact that there had been a prior contract sufficient to invalidate this deed? It must be remembered that there was nothing immoral in the prior contract, and that it violated no statute. It is not a case where an immoral consideration enters into the transaction and taints every part of it. Plaintiff made the deed when it was lawful to make it, and received a lawful consideration. The deed was good and carried the title to the defendant Lewis. At the time the deed was made the government and the tribe no longer had any interest in the land."

In *Henley v. Davis, supra,* the first deed was made on August 25, 1909, and recited a consideration of $800 for 40 acres of land described therein, and on February 4, 1910, in consideration of $600, the plaintiff in that case executed and delivered to defendant a second deed describing an additional 30 acres of said allotment. At the time of these two deeds plaintiff was a minor, and thereafter, on June 2, 1910, after attaining her majority, she executed a third warranty deed conveying the 70 acres of land embraced in the two preceding deeds, for a consideration of $1 and other valuable considerations. The validity of this third deed was attacked because, the plaintiff having previously attempted to convey said lands while a minor in violation of the federal restrictions, it was said she could not thereafter, when such statutory restraint had been removed, make a valid conveyance to

said lands to the same grantee. In a well-considered opinion by Bleakmore, C., it was said:

"The only restriction upon alienation of the allotted land of the plaintiff herein imposed or continued in force by the act of May 27, 1908, was that which rendered her personally powerless to contract with relation thereto while a minor, as defined by that act. After she became 18 years of age as shown by the enrollment rescords of the Commissioner to the Five Civilized Tribes that restriction was *ipso facto* removed, and that act, having spent its force, so far as her allotment and its future disposition were concerned, became inoperative. The deed of June 2, 1910, is apparently a separate and independent conveyance, voluntarily made by the plaintiff, the execution of which was perhaps prompted by a sense of her moral obligation to defendant. The land was then hers, free from all restraint upon alienation, and she could part with it to whomsoever she chose, upon any lawful consideration she saw fit to accept, or without consideration. When she thus conveyed it by proper deed for the recited consideration of '$1 and other valuable considerations,' such conveyance was binding upon her."

In *Hartman v. Butterfield Lumber Co., supra,* a question similar to the one here involved was presented, and Mr. Justice Brewer, speaking for the court, said:

"For the purposes of this case it may be conceded that the contract made before the patent was, by virtue of the policy of the United States as disclosed in its statutes, void, and could not have been enforced by the Norwood & Butterfield Co., but the contract was not inherently vicious and immoral. It was simply void because in conflict with the federal statutes. *Anderson v. Carkins,* 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272. When the patent issued, the full legal title passed to the patentee. He could do with the land that which he saw fit, sell or give it away, and, if he voluntarily conveyed it, he could not thereafter repudiate the conveyance. He

might well have thought that, having received the money from the company to enable him to pay for the land, it was equitable that he should convey that interest which he had agreed to convey.    At any rate, he had a right to exercise a choice in the matter, and, having exercised it, he at least cannot complain."

In the light of these authorities it would seem that, even though the agreement to convey the land entered into by plaintiff with defendant while plaintiff was a minor was void, and the same could not be enforced had plaintiff declined to perform the same, yet there was no legal impediment in the way of plaintiff conveying his lands to any grantee he chose after reaching his majority, and upon any legal consideration which he saw fit to accept.    Upon the date of the first deed, to wit, August 1st, none of the consideration had been paid, and, in fact, none was paid until August 7th, and the balance was paid at different times and in different amounts, extending over a period of time from August 7, 1911, to May 13, 1912.    There is not the slightest evidence in the record tending to impeach the deeds of August 9th and August 31st, other than the fact that an agreement had been made by plaintiff while a minor to convey his lands to defendant.    There is no evidence of coercion, undue influence, or other grounds of equitable interference that would impeach either of said two last-named conveyances, and, if plaintiff was on the date of their execution an adult, he was capable in law of conveying said lands to whomsoever he chose, for any lawful consideration, and could, if he saw fit, give said lands away; and, when he executed and delivered these deeds, and accepted the consideration, said deeds were valid and binding conveyances, and operated to transfer plaintiff's title to the grantee therein named, provided he had then reached his majority.

This has been the construction placed upon that act by the department of justice. It is a matter of common knowledge to the bench and bar of this state that the United States, acting under the powers of its guardianship, instituted a large number of suits in the United States Court for the Eastern District of this state to cancel and remove as clouds upon the title of allottees a vast number of conveyances which, it was alleged, had been procured theretofore in violation of the congressional restrictions. Since the passage of the act of May 27, 1908, it has been the policy of the department to investigate each individual case, and, where sufficient consideration has been paid for the lands purchased, and restrictions have been removed so that valid conveyances could be executed, to permit the title of the purchaser to be perfected by the execution of new conveyances, and to attain this result the lands conveyed have frequently been appraised, and, where the consideration paid in the former conveyances was not adequate, upon payment of an additional sum, which, together with the amount already paid, would equal the fair value of the land, the suits by the government have been dismissed, and many thousands of titles involved have in this way been quieted.

The census card shows plaintiff's enrollment to have been made in August, 1898, and there is no other evidence in the record of plaintiff's age. The burden was upon the plaintiff to establish the fact of his infancy at the time of the execution of the deeds in question. Where nothing appears to the contrary, persons entering into an agreement are presumed to be adults and competent to contract, and, where one relies upon his infancy to defeat his act, contract, or deed, he has the burden of

proving such fact. *Giles et al. v. Latimer et al.,* 40 Okla. 301, 137 Pac. 113; *Rice v. Ruble,* 39 Okla. 51, 134 Pac. 49. The census card was offered by defendant, and upon an inspection it is disclosed that same is not certified to as constituting the complete enrollment records, which certificate is necessary to make it conclusive evidence of the age of the allottee. *Scott v. Brakel et al.,* 43 Okla. 655, 143 Pac. 510; *Campbell v. McSpadden et al.,* 44 Okla. 138, 143 Pac. 1138; *Duncan v. Byars et al.,* 44 Okla. 538, 144 Pac. 1053.

Plaintiff, in answer to a question, stated that he would not be of age until the 11th day of September, but this answer, upon motion, was stricken. The burden being upon plaintiff to establish the fact of infancy, and, the presumption of the law being that he was of age upon the date the conveyances were made, the evidence was insufficient to warrant the court in finding that plaintiff was a minor on the date of the execution of these several instruments. If plaintiff was, in fact, a minor on the 1st day of August, but was an adult on the 9th day of August, in the absence of circumstances invalidating that deed, the mere fact of his minority on the 1st day of August would not render the second deed void. Nor would the fact that plaintiff was a minor on the date of the execution of the two first deeds render illegal the third deed, executed August 31st. Admitting that an agreement to sell was entered into while plaintiff was a minor, none of the consideration was paid until the 7th day of August, and only a small portion was paid before the execution of the last deed, and other payments were made as late as January, 1913.

While some of the evidence tends to show the land was worth more than was paid for it, the fact that the

consideration paid was inadequate is not of itself sufficient to render the conveyances void. In *Lewis v. Allen, supra,* it was said:

"Inadequacy of consideration alone is not sufficient to justify a court of equity in setting aside a deed regularly executed." *Barker v. Wiseman,* 51 Okla. 645, 151 Pac. 1047; *Henley v. Davis, supra.*

The circumstances under which the agreement to sell was executed are said to be such as to render the agreement and the deeds thereafter executed immoral and against public policy. It is not shown that defendant induced plaintiff to leave home, and, while plaintiff testifies he was afraid he might be arrested, he further testifies that some parties at Muskogee were trying to purchase his land, and he was afraid they would get him up to that city and obtain a deed to his land without paying him therefor, and he wanted to get away from them. Defendant testified that their purpose in leaving was to avoid the Muskogee parties, and prevent said parties from obtaining a deed to his land; that the only reference made during their absence to the criminal prosecution was that defendant told plaintiff he did not think it would amount to anything, and that, if plaintiff would stay with him, he (defendant) would help plaintiff out of his trouble. This is all of the evidence there is in the record tending to impeach the integrity of the transaction, other than the alleged minority of plaintiff and the alleged inadequacy of consideration.

These facts were insufficient to render the contract immoral and against public policy, and, taking the evidence as a whole, it was insufficient to support the findings of the court and the judgment rendered thereon.

The judgment is reversed, and the cause remanded.

All the Justices concur.