KETCHUM v. PLEASANT VALLEY COAL CO.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1919. Rehearing Denied May 26, 1919.)

No. 5103.

1. MINES AND MINERALS ☞42—VALIDITY OF PATENT—COLLATERAL ATTACK.

A patent to coal land, issued to an entryman who, after filing his declaratory statement, but before making entry, conveyed the land, is not void, and its validity can be questioned only by the government.

2. ESTOPPEL ☞27(1)—COAL LAND ENTRYMAN—CONVEYANCE.

A coal land entryman, who conveyed the same for a valuable consideration after filing his declaratory statement, but before completing his entry, and who on receiving the patent delivered it to his grantee, is estopped to deny the validity of his conveyance, and a subsequent grantee from him with notice is equally estopped.

3. ESTOPPEL ☞47—CONVEYANCE BY ENTRYMAN OF PUBLIC LAND—SUBSEQUENT PATENT.

A patent for coal land, issued to an entryman who has previously conveyed his right in the land, inures to the benefit of his grantee, under Comp. Laws Utah 1907, § 1979.

4. ESTOPPEL ☞93(8)—PERMITTING IMPROVEMENTS OR EXPENDITURES.

Possession of land by a grantee for more than 20 years, during which time it expended large sums in improvements, is a bar to a suit in equity to recover the land by adverse claimants, who had knowledge of such possession and use.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Suit in equity by the Pleasant Valley Coal Company against Truman A. Ketchum. Decree for complainant, and defendant appeals. Affirmed.

E. A. Walton, of Salt Lake City, Utah (T. D. Walton, of Salt Lake City, Utah, on the brief), for appellant.

R. G. Lucas, of Salt Lake City, Utah (W. H. Dickson, A. C. Ellis, Jr., Waldemar Van Cott, W. D. Riter, P. T. Farnsworth, Jr., and Ferdinand Ericksen, all of Salt Lake City, Utah, on the brief), for appellee.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WADE, District Judge. By this action a decree is sought adjudging the plaintiff (in the District Court—the appellee here) to be the absolute owner of about 160 acres of coal land in Carbon county, state of Utah; and it is prayed that the appellant be barred from asserting title thereto. For clearness of statement, the parties will be designated as in the District Court, and the plaintiff—Pleasant Valley Coal Company—will be referred to as the "company."

The plaintiff in its petition based its claim for relief upon (a) the record title; (b) adverse possession; and (c) estoppel.

1. Both parties claim record title through one Marks, who, in May, 1888, filed a coal declaratory statement, which gave him the right to make entry of the land. In October, 1888, before he had made entry, he executed a deed of the land to one Williams, who purchased for the Pleasant Valley Coal Company, though this did not appear in the deed.

In March, 1889, Marks made application to make entry and to purchase said land from the government, which right was contested, but decided in favor of Marks, and on June 5, 1891, a patent issued to him, which patent he delivered to attorneys to be delivered to the company, which by conveyances, Marks to Williams (1888), Williams to Goss (1888), and Goss to the company (1892), all of which deeds were duly recorded, had acquired the record title to said property. The company had the patent recorded March 28, 1893.

The consideration for the aforesaid conveyance by Marks to Williams was "somewhere from $3,000 to $4,000" about one-half of which was paid at the time of the conveyance, and the balance of which was paid to Marks when he delivered the patent as aforesaid.

The evidence tends to show that, when Marks conveyed to Williams, it was understood that Williams was taking title for the company, and that it was agreed that Marks should proceed to procure the patent and turn it over to the company, and then receive the balance of the purchase price, which he did as aforesaid.

2. The claimed title of the defendant Ketchum also comes through Marks, who in 1913 made a quitclaim deed to one Sweet, who in 1915 executed a quitclaim deed to Ketchum. The deeds to Sweet and Ketchum being recorded, the plaintiff brought this action. Sweet, when he procured the quitclaim deed from Marks, paid him $200 and entered into a contract in writing, which recited, among other things, that—

"Whereas, the other valuable consideration mentioned in said deed was and is as follows: That the said party of the first part claimed to own, at the time of the execution of the said quitclaim deed, the lands hereinabove described; that certain other parties, including the Pleasant Valley Coal Company, a corporation, also claims to have certain right. title, and interest in and to said lands, and claims the ownership of said lands adversely to the said party of the first part, and the said party of the second part has agreed and by these presents does agree to prosecute the necessary actions against the said Pleasant Valley Coal Company and all other parties who now appear of record to claim ownership of or any right, title, or interest in and to said lands, for the purpose of quieting the title in said lands in himself under said quitclaim deed hereinbefore referred to; that said suits shall be prosecuted only as the said party of the second part is advised by counsel so to do. Said

suits shall be prosecuted diligently by said second party, and the said first party, on his part, agrees to furnish all evidence within his knowledge, for the purpose of aiding the said second party in the prosecution of said suit or suits."

It was then provided that, in case of an adjudication in favor of Sweet, the property should be sold, and Marks should have one-half the net proceeds of such sale.

An action was commenced by Sweet against the company in 1914, which he afterwards dismissed. On October 1, 1915, Sweet executed a quitclaim deed of the property to Ketchum, who paid Sweet $1,250 therefor. Ketchum also purchased for $2,500 the interest of Marks under the contract aforesaid. Ketchum had general knowledge of the claims of the company to the property, and specific knowledge by the terms of the aforesaid contract that—

"The Pleasant Valley Coal Company, a corporation, also claims to have certain right, title, and interest in and to said lands, and claims the ownership of said lands adversely to said party."

3. Ketchum, in order to avoid the effect of the deeds, Marks to Williams, and Williams to Goss, and Goss to the company, asserts that Williams, Goss, and the company were disqualified to make entry of the coal land.

[1] We do not find it necessary to decide this question. Ketchum is asserting a personal right to this property. He is not representing the government. The patent issued to Marks is not void. Under everything claimed by defendant, such patent would at most be voidable. The government alone could complain of the alleged invalidity. As was said by Justice Brewer in Hartman v. Company, 199 U. S. 335, 26 Sup. Ct. 63, 50 L. Ed. 217:

"Whether the government could challenge the conveyance we need not determine; for, if it had any right to interfere, it has not chosen to do so."

[2] Marks was qualified to make entry and receive the patent. Before doing so, however, but after making his declaratory statement, he for a valuable consideration executed a deed of said property to plaintiff's grantor. He would certainly be in no position to assert that there was fraud or illegality in the proceedings through which he acquired the patent, and his grantees are in no better position. No one will contend upon this record that the defendant has any rights as an innocent purchaser.

[3] 4. It is also claimed that inasmuch as Marks, at the time of the conveyance to Williams, had no title (the patent not having been issued to him for more than three years thereafter), no title passed to Wiliams, nor to his grantees. It may be conceded that no legal title passed at the time of the conveyance, but when Marks received his patent, and delivered it to his grantee, and received the balance of the purchase price, certainly no title still remained in him which he could assert against his grantee, who had paid him for the land, and he could not convey any greater right than he possessed—certainly not to one not an innocent purchaser for value. Furthermore, having no title when he conveyed for a full and valuable consideration, when he acquired title (by the patent), such title inured to his grantee.

The statutes of Utah expressly so provide (Comp. Laws 1907, § 1979), and the rule of the Utah statute in no manner conflicts with any statute of the United States, but is consistent with well-settled principles of equity.

We find nothing in the numerous cases cited by counsel for defendant in conflict with these conclusions. Numerous cases are cited in which the courts denied relief, but in nearly every case the contract was executory, and specific performance was sought, but here the contract (of sale Marks to Williams) was executed, not only in the original conveyance, but by subsequent ratification. The District Court in its opinion well says:

"At the time that Marks received the balance of the purchase price, and delivered the possession of the patent, and ratified and confirmed his deed theretofore given, under the decision of the Supreme Court above cited (Hartman v. Butterfield Co., 199 U. S. 335 [26 Sup. Ct. 63, 50 L. Ed. 217]), he had legal right to alienate the said premises, and neither he nor his grantee, the defendant Ketchum, after the lapse of more than 20 years, should now be permitted to undo the contract and agreement thus executed, ratified, and confirmed."

[4] 5. Not only is defendant barred by contract conveyance and ratification, but in addition thereto the record shows that the company took possession of the property about 1892 under the Marks conveyance, and has held possession ever since, paid the taxes, and erected a storehouse, trestle, coal tipple, dwellings for employés, officers' houses, offices, power house, hospital, water tank, tram line, coke ovens, railroad tracks, power lines, etc., at an expenditure of about a quarter million dollars. Churches, schoolhouses, and other public or semipublic buildings have been erected upon this land under leases from the company. During the construction of most of these improvements, Marks and his grantees have been silent; it is now too late to ask to be heard in a court of equity.

The claim that only a portion of the land has been actually occupied by these improvements is without merit.

The judgment of the District Court is affirmed.