## VINES v. GENERAL OUTDOOR ADVERTISING CO., Inc.

United States District Court
S. D. New York.
Feb. 27, 1947.

Lyman Stansky, of New York City, for plaintiff.

William E. Beehan, of New York City (Maxwell S. Mattuck and Benjamin H. Trask, both of New York City, of counsel), for defendant.

COXE, District Judge.

This is a motion by the defendant for summary judgment dismissing the second amended complaint. The motion is made on the pleadings and on the examinations before trial of the plaintiff and of John B. Clark, an officer of the defendant.

The action is brought to recover the sum of $71,839, with interest, and was commenced on July 5, 1944. The jurisdiction is based on diversity of citizenship.

The second amended complaint states four separate claims. In the first claim it is alleged that on or about March 1, 1936, the defendant employed the plaintiff to solicit advertising contracts and assigned to him Liebmann Breweries, Inc. as an account to solicit; that in or about 1937 the plaintiff secured an advertising contract from Liebmann Breweries, Inc.; that thereafter, and up to December 31, 1943, the defendant received as a result of the plaintiff's continuous efforts about one million dollars from Liebmann Breweries, Inc. for advertising, and that the plaintiff's services in securing this business were worth $80,000, no part of which has been paid except $10,000.

The second claim incorporates portions of the first, and alleges that the parties signed four "documents" dated March 1, 1936, April 8, 1941, January 7, 1942, and January 1, 1943, respectively. It also alleges that from March 1, 1936, to and including March 1, 1943, the plaintiff duly performed all the terms and conditions of these "documents" on his part to be performed, "although the said documents are not enforceable legal contracts." It further alleges that the plaintiff signed the "documents" "because of fraud, deceit and coercion practiced by the defendant upon the plaintiff prior to the date of each document", and it specifies the particular acts of fraud, deceit and coercion as follows:

"Seventeenth: Plaintiff signed the documents dated March 1, 1936, April 8, 1941, January 7, 1942 and January 1, 1943 because of fraud, deceit and coercion practiced by the defendant upon the plaintiff prior to the date of each document, respectively, as follows:

"(a) Prior to March 1, 1936 defendant was indebted to plaintiff in a sum in excess of Two Thousand ($2,000.) Dollars for business secured by plaintiff for it during an immediately preceding period of employment. With intent to deceive plaintiff and to coerce and force him into signing the document dated March 1, 1936, defendant falsely stated to him that if he did not sign said document defendant would not pay sums already due and earned, and that it had the power and right so to do. Said representations were false and known to defendant to be false but plaintiff believed them to be true and relied upon said statements and was fearful that the defendant would carry out its threat to refuse to pay plaintiff sums already due unless he continued in its employ by signing said document.

"(b) Similar threats and misrepresentations were made by defendant to plaintiff prior to the signing of the documents dated

April 8, 1941, January 7, 1942, and January 1, 1943."

It is then alleged that "by reason of the duress and fraud to which plaintiff was subjected" and "of the nonenforceability of each and every document purporting to define the relationship of the parties hereto" the plaintiff is entitled to recover the reasonable value of his services, amounting to $80,000, of which, only $10,000 has been paid.

The third claim incorporates part of the first two claims, and alleges that in 1938 the defendant arbitrarily and in violation of the plaintiff's rights declared part of the Liebmann Breweries, Inc. business a "local" account and part a "national" account, and in 1940 declared the Liebmann account wholly a "national account," thereby wrongfully depriving the plaintiff of the value of his services in connection with the account. It is further alleged that "with intent to deceive plaintiff and to coerce and force him into acceding" to these declarations, the defendant "falsely represented to plaintiff that it had a right to deprive him of his commissions on said account," and that if he did not sign the "documents" of January 7, 1942 and January 1, 1943, he would be deprived of income from all other accounts that he had theretofore secured for the defendant, and that the plaintiff, believing and relying on these statements, signed the documents of January 7, 1942, and January 1, 1943. It is then alleged that the plaintiff is entitled to the reasonable value of his services as claimed in the second claim.

The fourth claim again incorporates certain of the allegations of the first and second claims, and alleges that prior to January 1, 1943, the defendant was indebted to the plaintiff in the sum of $508 on business other than the Liebmann business, no part of which has been paid except the sum of $169, and further, that between January 1, 1943, and December 31, 1943, on various named accounts assigned to the plaintiff, the plaintiff secured business for the defendant and the reasonable value of his services therefore is $1,839.

The answer is in substance a denial, together with various affirmative defenses to each claim. In the main defense to all four claims it is alleged that the parties entered into employment agreements, copies of which are annexed, and that under the terms of these agreements nothing is due the plaintiff. There are also subsidiary defenses to the first three claims, namely, (1) a general release from the plaintiff to the defendant, dated April 8, 1941; (2) the statute of limitations, and (3) the statute of frauds.

The defendant is engaged in the business of outdoor advertising, and maintains for that purpose billboards and other structures in different parts of the country. The plaintiff was first employed by the defendant in 1922 at Hartford, Connecticut, and went to work with the Brooklyn branch of the business in 1932 as an advertising salesman.

On March 1, 1936, the plaintiff entered into a written employment agreement with the defendant under which the plaintiff was employed as a salesman to solicit advertising contracts for the defendant for an indefinite period. This agreement defined the rights and obligations of the parties with particularity, and may be described briefly as follows: By its terms the agreement could be terminated at any time by either party upon written notice. The plaintiff was required to devote his entire time to the business, but was permitted to solicit advertising only from such advertisers as were assigned to him by the defendant. The defendant reserved the right at any time to withdraw or transfer accounts assigned to the plaintiff, and in the event of any such withdrawal or transfer prior to the execution of a contract the plaintiff would be entitled to no compensation for soliciting or negotiating the contract. It was also provided that the plaintiff would be paid as his "entire compensation" "a weekly compensation payable at the end of each week," dependent upon the plaintiff's performance under a sales "quota" assigned to the plaintiff at the beginning of each calendar year, and based on the expected business to be procured by the plaintiff during the year. If the plaintiff exceeded or fell short of this "quota" there was to be an adjustment in the compensation. The plaintiff's "quota" for the period from March 1, 1936,

to December 31, 1936, was fixed in the agreement at $37,500.

Paragraph 9 of the agreement reads as follows:

"9. Upon the termination of this agreement all rights of the Salesman to compensation for any services rendered to the Company hereunder or otherwise shall thereupon cease and terminate, and the Salesman hereby waives and relinquishes any and all rights to any compensation from the Company for any services he may have so rendered."

The parties continued to operate under the 1936 agreement until April 8, 1941, when a new agreement was signed, and during this five-year period the plaintiff received his weekly compensation at varying rates in accordance with the terms of the agreement. The plaintiff testified in his examination before trial that the first contract he procured from Liebmann Breweries, Inc., was in 1937; that in 1937, 1938 and 1939 he worked on the account; that he was given credit in those years for the Liebmann advertising placed in Metropolitan New York, and that the account was withdrawn from him entirely in 1940.

The agreement of April 8, 1941, is substantially the same as the 1936 agreement except that it changed the basis of the plaintiff's compensation and provided for a specified "weekly salary" for a period of six months, which could not be reduced during that period. On the same date that the agreement was signed, namely, April 8, 1941, the plaintiff executed a general release to the defendant in which he released the defendant "from any and all claims and demands of any kind whatsoever * * * and particularly from any claims or demands for salary, commissions or other compensation under any employment or contract of employment" betweeen the parties.

New agreements were signed by the parties on January 7, 1942, and January 1, 1943, both similar to the 1941 agreement, and under these agreements the plaintiff continued to receive his weekly compensation until March 1, 1943, when he resigned voluntarily from the employ of the defendant.

The defendant insists that under the terms of the employment agreements there is nothing due the plaintiff. The plaintiff, on the other hand, takes the position that the agreements are invalid and unenforceable (1) for lack of mutuality, (2) for fraud, deceit and coercion, and (3) for illegality under the anti-trust laws; and he seeks to recover in the action the reasonable value of his services during the entire period of the employment from March 1, 1936, to March 1, 1943.

1. With respect to the plaintiff's contention that the employment agreements lacked mutuality, the plaintiff says that the defendant's promise to pay the plaintiff "a weekly compensation" or a "weekly salary" was illusory because the employment was at will, the plaintiff was permitted to solicit only such accounts as were assigned to him by the defendant, and the defendant could at any time transfer or withdraw these accounts from the plaintiff and in that way deprive him of his opportunity to earn any compensation. This is merely to say that the plaintiff's promise to work for the defendant was a unilateral promise. But the agreements have been fully performed, and it is well settled that "Even when the obligation of a unilateral promise is suspended for want of mutuality at its inception, still, upon performance by the promisee, a consideration arises 'which relates back to the making of the promise; and it becomes obligatory.'" Grossman v. Schenker, 206 N.Y. 466, 468, 100 N.E. 39, 40; Rubin v. Dairymen's League Co-op. Assn., 284 N.Y. 32, 37, 29 N.E.2d 458. See also St. Louis Hay & Grain Co. v. United States, 191 U.S. 159, 24 S.Ct. 47, 48 L.Ed. 130; Hartman v. Butterfield Lumber Co., 199 U.S. 335, 26 S.Ct. 63, 50 L.Ed. 217. I do not think, therefore, that the agreements are invalid and unenforceable for lack of mutuality.

2. The plaintiff's contention that the agreements are invalid and unenforceable for fraud, deceit and coercion is likewise without merit. The plaintiff's testimony on this branch of the case is in substance as follows: He admitted that no deceit was practiced on him by the defendant in connection with the 1936 agreement, but

he said that prior to the execution of the agreement the defendant owed him $2,000, and he was "given to understand" that unless he signed the agreement any compensation "in the way of business already secured would be completely eliminated," and he could not "receive the benefits of these things unless I (he) continued in the employ of the Company." With respect to the execution of the 1941 agreement, he said that the Liebmann account had already been taken away from him, but he was "always hopeful of getting that contract back again," and he knew that unless he signed the agreement he "could no longer work for the General Outdoor Advertising Company." His testimony concerning the 1942 and 1943 agreements was a duplication of his testimony relating to the 1941 agreement.

There is clearly nothing on this showing to support a claim of fraud, deceit or coercion in the execution of any of the four agreements; the most that can be spelled out of the testimony is that the defendant refused to pay the plaintiff the money owed to him and was unwilling to keep the plaintiff in its employ except on the terms of the agreements. The plaintiff was under no duress or coercion in signing the agreements, for the courts were open to him if the defendant owed him money, and he was at liberty to seek other employment if the terms of the proposed agreements were unsatisfactory. Doyle v. Rector, etc., Trinity Church, 133 N.Y. 372, 31 N.E. 221; Kamenitsky v. Córcoran, 177 App.Div. 605, 164 N.Y.S. 297; Carden v. Kerr, 224 App. Div. 1, 229 N.Y.S. 45, affirmed 250 N.Y. 544, 166 N.E. 318; Radich v. Hutchins, 95 U.S. 210, 24 L.Ed. 409; Hartsville Oil Mill v. United States, 271 U.S. 43, 49, 46 S.Ct. 389, 70 L.Ed. 822.

3. The plaintiff's contention that the employment agreements are invalid as in violation of the anti-trust laws needs little comment. The basis of the contention is found in the testimony of John B. Clark, an officer of the defendant, to the effect that there was an arrangement between the defendant and a national selling organization known as "Outdoor Advertising, Inc.," under which Outdoor Advertising, Inc., was entitled to a commission from the defendant on "national" advertising placed with the defendant. It is argued from this that the Liebmann account was taken from the plaintiff because of a claim by Outdoor Advertising, Inc. to commissions on the account, and that this in some way constituted a violation of the anti-trust laws. The fallacy in the argument is that under the employment agreements the defendant had an absolute right to withdraw the Liebmann account from the plaintiff, irrespective of any arrangement with Outdoor Advertising, Inc. Even if there were a conspiracy between the defendant and Outdoor Advertising, Inc., to violate the anti-trust laws, still such collateral agreements as are involved in the present action would not be affected. Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 549-551, 22 S.Ct. 431, 46 L.Ed. 679; A. B. Small Co. v. Lamborn & Co., 267 U.S. 248, 252, 45 S.Ct. 300, 69 L.Ed. 597; Standard Oil Co. v. Markham, D.C., 61 F.Supp. 813.

4. The case is thus relegated to the employment agreements, each of which provides that upon termination of the agreement "all rights of the Salesman to compensation for any services rendered to the Company * * * shall thereupon cease and terminate, and the Salesman hereby waives and relinquishes any and all rights to any compensation from the Company for any services" he may have so rendered. The plaintiff indicated in his testimony on the examination before trial that he fully understood the effect of this provision when he signed the agreements, and with the termination of the agreements the provision stands as a bar to all four of the stated claims. This conclusion is further fortified by the general release executed by the plaintiff on April 8, 1941, releasing any claims the plaintiff may have had against the defendant as of that date.

The motion of the defendant for summary judgment dismissing the second amended complaint is accordingly granted.