## ST. LOUIS HAY AND GRAIN CO. *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No 41.   Argued October 30, November 2, 1903.—Decided November 16, 1903.

When a void but not illegal contract of sale has been performed on both sides, the vendor cannot recover on a *quantum valebat* less the amount already paid.

The United States bought hay for a camp, providing that the quantity bought be decreased at its option, not exceeding twenty per cent, and if the troops should be wholly or in part withdrawn the contract should become inoperative to the extent of such reduction, and that deliveries were to begin within five days and proceed at daily rates of at least one sixtieth of the amount, or in such quantities and in such times afterward as might be designated by the quartermaster. The troops were withdrawn, orders were delayed beyond sixty days and a little less than the whole amount was ordered. The claimant protested and claimed damages but accepted payment for the whole without reserving any rights at the time.

*Held* that there was no breach of contract by the United States even if it was still open to the claimants to demand damages in case of a breach, and if the setting up of the invalidity of the contract by the United States in answer to the demand would have opened the way to a *quantum valebat.*

THE facts are stated in the opinion of the court.

*Mr. William E. Harvey* and *Mr. George A. King,* with whom *Mr. William B. King* were on the brief, for appellant, cited §§ 3709, 3744, Rev. Stat., and as to failure to sign contract, *Clark* v. *United States,* 95 U. S. 539; *South Boston Iron Co.* v. *United States,* 118 U. S. 37; *Monroe* v. *United States,* 184 U. S. 524. The special contract was void for all purposes and the appellants were entitled to the *quantum meruit. Filor* v. *United States,* 9 Wall. 45; *Williams* v. *Bemis,* 108 Massachusetts, 91, and cases cited. There was no accord and satisfaction. Court below cited *United States* v. *Bostwick,* 94 U. S. 53; *Kirkham* v. *Brown,* 4 Ct. of Clms. 223; *Comstock* v. *United States,* 9 Ct. of Clms. 141; *Savage* v. *United States,* 92 U. S. 382.

But see *contra, City of Memphis* v. *Brown,* 20 Wall. 289; *Cumber* v. *Wane,* 1 Smith's Leading Cases, 7th Am. ed. 595, notes, p. 604; *Flockton* v. *Hall,* 14 Q. B. Ad. & El. 380; *Hall* v. *Flockton,* 16 Q. B. Ad. & El. 1039. This case is governed by *Piatt's Administrator* v. *United States,* 22 Wall. 496; *S. C.,* below, 10 Ct. of Clms. 163; *Fire Ins. Assn.* v. *Wickham,* 114 U. S. 564, 577; *Baird* v. *United States,* 96 U. S. 430; *R. R. Companies* v. *United States,* 104 U. S. 680, 687; *S. C.,* below, 14 Ct. of Clms. 125, 144; 15 Ct. of Clms. 232, 245; *Swift Co.* v. *United States,* 105 U. S. 691; 111 U. S. 22; *Cape Ann Granite Co.* v. *United States,* 20 Ct. of Clms. 1, 14; *The Gibbons and Clark* cases, distinguished. In this contract time was of the essence. *Hipwell* v. *Knight,* 1 Yonge & Collyer Eq. Exch. 401, 416; *Wilson* v. *Roots,* 119 Illinois, 379, 392; *Coon* v. *Spaulding,* 47 Michigan, 163; *Cameron* v. *Wells,* 30 Vermont, 633; *Bydenburg* v. *Welsh,* Baldwin, 331, 338; *S. C.,* Fed. Cas. No. 1583; *Carter* v. *Phillips,* 144 Massachusetts, 100; *S. C.,* 10 N. E. Rep. 500. This being a government contract it should be construed in accordance with good faith giving neither party an unconscionable advantage of the other. *Scott* v. *United States,* 12 Wall. 443; *Hume* v. *United States,* 132 U. S. 406; *United States* v. *Bank,* 96 U. S. 36. As to measure of damages in such a case, see *Monroe* v. *United States,* 35 Ct. of Clms. 199, affirmed 184 U. S. 524; *Murphy* v. *United States,* 13 Ct. of Clms. 372, 380.

*Mr. Assistant Attorney General Pradt* for the United States:

It has been held that § 3744, Rev. Stat., is a statute of frauds relating to contracts with the United States. *Clark* v. *United States,* 95 U. S. 539. And where the contract is executory and is not written it is not enforceable under § 3744, but where the agreement has been fully executed and the goods delivered and paid for an action cannot be maintained on the *quantum meruit.*

The *quantum meruit* could only be resorted to when the defendant is in default. *Galvin* v. *Prentiss,* 45 N. Y. 164; *Day*

v. *Railroad Co.*, 51 N. Y. 583; *King* v. *Brown*, 2 Hill (N. Y.), 487; *Coughlin* v. *Knowles*, 7 Met. 61. The express contract constitutes a complete defence to an action on the *quantum meruit.* *Stone* v. *Dennison*, 13 Pick. 1; *King* v. *Welcome*, 5 Gray, 44; *Gillespie* v. *Battle*, 15 Alabama, 276; *Williams* v. *Beemis*, 108 Massachusetts, 91.

It is a well settled principle that the statute of frauds has no application to an executed agreement. *Remington* v. *Palmer*, 62 N. Y. 31; *Larson* v. *Johnson*, 78 Wisconsin, 306; *House* v. *Bernheim*, 59 Connecticut, 133; *McCue* v. *Smith*, 9 Minnesota, 258. Executed contracts although unwritten are valid. *Webster* v. *Lecompte*, 74 Maryland, 258; *Crane* v. *Gough*, 4 Maryland, 333; *Bibb* v. *Allen*, 149 U. S. 497, and cases therein cited. *Gibbons* v. *United States*, 2 Ct. of Clms. 421; *S. C.*, 8 Wall. 269, controls this case.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims dismissing the appellant's petition. 37 C. Clms. 281. The petition alleges a contract by the United States to buy 9,000,000 pounds of hay from the claimant at the rate of sixty-one and one-half cents per hundred weight, a refusal by the Government to take the hay at the rate of one-sixtieth daily, as required by the contract according to the claimant's interpretation, and a failure to accept two hundred and fifty-five thousand two hundred and ninety-one pounds out of the nine million. The rest, it is admitted, was taken and paid for at contract rates. The claimant seeks compensation for an increased price paid by it, increased cost of transportation and loss of anticipated profits, caused by the delay, all as damages for the breach of the contract, or, alternatively, the market value of the hay less the amount paid by the United States. The answer is a general denial.

The Court of Claims finds that during the late war with Spain an advertisement was published by a quartermaster for 9,000,000 pounds of hay, among other things, seemingly for

use in Camp George H. Thomas, Georgia, and that in connection with it the following information was furnished: "The foregoing are the estimated quantities which will be required, but bids will be accepted in whole or in part . . . and awards made under accepted bids will provide that the quantities awarded may be increased or decreased at the option of the United States, not exceeding twenty per centum thereof . . . and further, that if the troops should be wholly or in part withdrawn, the awards shall become inoperative to the extent of such reduction. . . . Hay and straw. . . . Deliveries of the supplies to begin within five days from date of award, and proceed at daily rates of at least one-sixtieth of amount, or in such quantities and at such times afterwards, as may be designated by the chief quartermaster," etc. A bargain was made on these terms on July 12, 1898. Shipments were made, amounting, on August 27, 1898, to 4,685,949 pounds. On August 28 the quartermaster telegraphed to the claimant not to ship any more hay until notified to do so. This suspension of orders was due to the withdrawal of troops. The claimant then had 100 carloads in transit, which it was obliged to sell for what it could get, and protested against the stoppage. At different dates between September 12 and May 18 following the quartermaster telegraphed orders for hay, which were filled. Hay meantime had risen in value and cost the claimant more than it would have cost in the summer. Accordingly the claimant asked to be relieved from delivery, but the quartermaster refused, holding back money due to the claimant as security to compel performance. The claimant went on with deliveries, and in December was asking for orders "on our contract," on April 27 returned a voucher "covering hay on our contract," on May 27 sent a bill of lading and invoice "ordered upon our contract to day," and on June 24, 1899, wrote "we would like to know how soon you expect us to put in the balance of the hay due upon the contract, as we are anxious to get it all cleaned up." It would seem that no hay was ordered after June 13. The claimant

delivered the hay and received full payment for it under the contract, without protest or attempt to reserve any rights at that time. The last payment was made on July 24, 1899. On May 11, 1899, however, the claimant wrote to the quartermaster, claiming damages on account of the government not taking the hay at the rate of one-sixtieth per day and on June 28, and later, the quartermaster approved the claim.— Although, no doubt, both parties supposed their agreement binding, the Court of Claims held, and it is not disputed, that the contract was within Rev. Stat. § 3744, and not having been "reduced to writing, and signed by the contracting parties with their names at the end thereof," could not have been sued upon if it had not been performed. *Clark* v. *United States*, 95 U. S. 539; *South Boston Iron Co.* v. *United States*, 118 U. S. 37. See *Monroe* v. *United States*, 184 U. S. 524. It is argued by the claimant on this ground that it is entitled to maintain a *quantum valebat*.

On the facts stated it is evident that the claimant has no case. The invalidity of the contract is immaterial after it has been performed. When a lawful transfer of property is executed it does not matter whether the terms of the execution were void or valid while executory; the transfer cannot be revoked or the terms changed. A promise to make a gift does not bind, but a gift cannot be taken back, and a transfer in pursuance of mutual promises is not made less effectual by those promises or by the fact that money was received in exchange. The contract may be void, as such, but it expresses the terms on which the parties respectively paid their money and delivered their goods. See *Savage* v. *United States*, 92 U. S. 382. The proposition does not need to be argued or explained more at length. Of course, different considerations would come in if the claimant had been subjected to a motive from which it had a right to be free, as, for instance, by fraud or duress. But there was nothing which the law could recognize as duress, and the suggestion that it was peculiarly the duty of the officers of the Government to see that

the contract was put in binding form, is very far from making out an analogy to fraud. The claimant was bound to know the law at its peril. The agent of the United States made no representation, and the claimant in no way purported to submit its judgment to him, if that would have bettered its case.

But it is said that this is not the simple case of mutual performance of a void contract, but that the United States, although it has paid the price, has broken the contract in respect of time. It may be said that if the United States, instead of paying for the hay, had set up the invalidity of the contract, the claimant could have sued on a *quantum valebat*. *Clark* v. *United States*, 95 U. S. 539, 542, 543; *Bacon* v. *Parker*, 137 Massachusetts, 309, 310, 311. And it might be argued that the same result would follow if the United States, after paying the price, were compelled to rely upon the invalidity of the contract in answer to a claim of damages for a breach. Acceptance of payment by the vendor is not necessarily a waiver of such a claim. *Garfield & Proctor Coal Co.* v. *Fitchburg Railroad*, 166 Massachusetts, 119, 123. But we need not consider the questions suggested, because we agree with the Court of Claims that there was no breach. The right to diminish the order and to change the quantities and times was reserved in the fullest and most express terms, and especially with regard to the event which happened, the withdrawal of the troops. Therefore, if, in view of the protest and claim made by the claimant, we should assume that the payment of the contract price did not purport to be in full satisfaction of all claims under the contract, which would be going very far and would be against the findings, still there is no valid claim under it, because the United States has done all that it undertook to do. It is true that hay is an article varying greatly in price at different seasons of the year, and that would have been a reason for holding time of the essence, if the contract had fixed a time; but the contract left the time open, as we have said, and the claimant must be held to the bargain which it made, although it has been disappointed in reasonable hopes.

*Judgment affirmed.*