OCCIDENTAL CONST. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 1, 1917.)

No. 2954.

1. UNITED STATES ⊙68—ACTION—RECOVERY.
    Plaintiff, which hired mules to an agent of the United States under an agreement providing that extra care should be given the mules, cannot, where the contract was not binding on the United States, recover against the latter for injuries resulting to the mules from a failure to carry out the agreement.

2. UNITED STATES ⊙47—CONTRACTS—LIABILITY.
    Under Rev. St. § 3744 (Comp. St. 1916, §§ 6895), designed to prevent fraud on the part of officers intrusted with making contracts, the United States is not responsible for injuries to property in its possession, resulting from negligence on the part of its agents.

3. UNITED STATES ⊙96—CLAIMS—NEGLIGENCE.
    An action for damages for injuries to mules hired to an agent of the United States, claimed to have resulted from negligence, is one sounding in tort, and cannot be maintained under Tucker Act March 3, 1887, c. 359, 24 Stat. 505, as one for damages not sounding in tort.

4. TAXATION ⊙5—PROPERTY SUBJECT—MULES IN POSSESSION OF AGENT OF GOVERNMENT.
    Mules and equipment having been hired to an Indian agent, under an agreement that they should be returned to plaintiff, the hirer, a resident of California, are, where used on an Indian reservation in Arizona, subject to taxation under Civ. Code Ariz. 1913, § 4846, declaring that all property within the state shall be subject to taxation, and the United States government is not liable to plaintiff because the property was distrained for taxes in Arizona before it could be returned; neither plaintiff's residence nor the use of the property by the government freeing it from liability for taxes.

    Dietrich, District Judge, dissenting in part.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge:

Action by the Occidental Construction Company against the United States of America. There was a judgment for part only of the relief sought, and plaintiff brings error. Affirmed.

The plaintiff in error brought an action against the United States under the provisions of the act of March 3, 1887, known as the Tucker Act (24 Stat. 505). The facts as found by the court below are in substance the following: On January 10, 1913, the Department of the Interior, through its Indian Service, was engaged in certain construction work on the Mojave Indian reservation, Ariz., of which F. R. Schanck was the superintendent in charge, and H. P. Coultis was the special disbursing agent. On January 10, 1913, the plaintiff delivered to Schanck, as the agent of defendant, 100 mules and certain grading equipment and harness for the use of the defendant in its said work, and Schanck agreed on behalf of the United States to take said property from the corral of the plaintiff at Los Angeles to said Indian reservation, and after the completion of the work to return the same to the plaintiff's corral in Los Angeles. The price agreed upon for the use of the mules was $10 per month for each mule, and for the use of the other property $273.50 per month. Schanck caused the property to be transported to the Indian reservation. The work was completed on April 10, 1913. Before the property was delivered the plaintiff directed the attention of said Schanck to certain blank forms of

contract for the letting of said property, and informed him that the property could only be let on said terms. Schanck replied that he had no legal authority to sign such a contract, but that he was constantly hiring mules for the government, and these mules and equipment were needed at once. The contracts were prepared by the plaintiff and forwarded to Schanck by mail, and were returned to him, bearing the signature, "United States Indian Service, Hugh P. Coultis, Clk. and Spl. Disbursing Agent." Coultis signed the same under Schanck's direction. On January 30, 1913, the plaintiff and Schanck executed the formal offer and acceptance memorandum authorized by the Secretary of the Interior for the hiring of animals and other personal property by said Indian Service. The price to be paid was the same as had been agreed upon, and said formal offer and acceptance was used as the basis of the disbursement of all funds of the United States applied to payment for the use of said property by the said disbursing agent. The work on the Indian reservation had been authorized by an act of Congress, and Congress had made an appropriation therefor. On or about March 7, 1913, the county assessor of Mojave county, Ariz., assessed taxes in the sum of $415.14 on said property, valuing the mules at $100 per head, which was their actual value. Said property was then on the reservation, and was in the custody of the United States, and in use on the work. On the completion of the work on April 10, 1913, the mules were driven from the reservation to the railroad station at Topock in said Mojave county, for the purpose of being shipped to Los Angeles. They were in charge of a person in the employment of the United States, directed by Schanck to take them to the station. One mule was drowned without negligence on the part of any one. When the remaining 99 mules reached Topock the county tax assessor of Mojave county stated to the person in charge that he would take possession of the mules. No objection was made on behalf of the defendant or the man in charge to the possession so taken by the assessor. The assessor took possession under a claim of lien under section 4872 of the Civil Code of Arizona, which provides that, in the event the owner of personal property shall fail to pay the taxes assessed thereon, the assessor shall seize sufficient of said personal property to satisfy the taxes and costs. The plaintiff was notified of the seizure, and communicated with Schanck, and was informed by the latter that he had taken the matter up with the United States district attorney at Phœnix, and that he expected to secure the release of the property without the payment of said taxes. On April 15th the plaintiff informed the defendant that, if it was necessary to pay the tax to prevent a sale, it would advance the money. Schanck replied, requesting that the money be sent, but saying that he would not pay it over, unless necessary. On April 16th the plaintiff sent the money, with the request that, if he must pay the tax, he do so under protest. The amount so paid under protest was $825.94. Whereupon the defendant regained possession of the property and loaded the same into cars and caused the same to be transported to Los Angeles and delivered to the plaintiff. While the mules were in the possession of the United States on the reservation, they were properly fed; but they were so negligently used that the shoulders of some of them were bruised, and the necks were made sore, and while they were in the possession of the county assessor they did not receive sufficient food, and in fact were nearly starved. The condition of the mules when delivered to the plaintiff at Los Angeles was due to their bruised necks and sore shoulders and the improper feeding while in the charge of the county tax assessor. The plaintiff had no knowledge that they were not properly fed while in the custody of the assessor. Twenty-one of said mules had sore shoulders and sore necks, and on account thereof the plaintiff was not able to use them until June 1, 1913. Certain harness of the value of $48.42 was not returned to the plaintiff, and certain grading equipment of the value of $42.78 was not returned. Other grading equipment was damaged through negligence, to the extent of $70.06. The defendant paid the agreed rental value of the mules and equipment while the same were on the reservation. Neither Schanck nor Coultis had authority to execute the contracts sent to Schanck by the plaintiff, and there was no ratification of said written contracts on the part of the United States, and no estoppel against

the United States to deny the validity thereof. The plaintiff paid $3 for the services of a man to unload the mules and deliver them to plaintiff''s corral in Los Angeles on April 26th, and paid $12.50 for the services of the men to unload the other property and deliver it to the plaintiff. The men were employed by the plaintiff to do this work at the request of the defendant. By reason of breakage in the equipment, which was the result of lack of ordinary care on the part of the persons using the same while on the reservation, the equipment was damaged in the sum of $70.06, and the property so received, but not returned to the plaintiff, was of the value of $91.20. As a conclusion of law the court found that the plaintiff was entitled to a judgment against the defendant for the sum of $176.70, and no more, and judgment was entered for that amount.

The plaintiff in its complaint sought to recover, in addition to the sums allowed by the court below, the reasonable value of the use of 99 mules from April 10th to April 23d; for the loss of the use of the 99 mules from April 26th to June 1st, during which time they were alleged to be unfit for work, because not properly fed while in the possession of the tax assessor; for the feed and care of the mules from April 26th to June 1st; for the permanent deterioration in value of the mules; for the sums paid to the assessor for feed and transportation of feed for the mules, and for their care while in his custody; and for the amount of the tax, costs, and expenses paid to the assessor.

M. M. Meyers and Charles E. Dow, both of Los Angeles, Cal., for plaintiff in error.

Albert Schoonover, U. S. Atty., and Gordon Lawson, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT and HUNT, Circuit Judges, and DIETRICH, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The plaintiff attached to its complaint copies of the contracts, one relating to the mules, and one relating to the grading equipment. It brings to this court none of the evidence in the case, but relies upon the findings of fact of the court below as ground for the recovery of the sums for which it sues.

The plaintiff contends that, notwithstanding the finding of the court that neither Schanck nor Coultis was authorized to enter into the written contracts which were pleaded, and that there was no ratification or estoppel in relation thereto, the plaintiff was entitled to judgment for the injuries to the mules while they were in the actual possession of the defendant, for the reason that the contract was fully performed, citing Clark v. United States, 95 U. S. 539, 24 L. Ed. 518, a case in which the government was held liable on an implied contract, the court ruling that, when a contract has been wholly or partially executed on one side, the party performing will be entitled to recover the fair value of his property or services as upon an implied contract for a quantum meruit. If the plaintiff were here suing for the value of the use of the mules by the defendant, the case so cited would be directly in point, as would also be St. Louis Hay & Grain Co. v. United States, 191 U. S. 159, 24 Sup. Ct. 47, 48 L. Ed. 130, and United States v. Andrews, 207 U. S. 229, 28 Sup. Ct. 100, 52 L. Ed. 185.

But the plaintiff contends that it is seeking to recover damages for the negligence of the employés of the government in their treatment of the mules. In answer to that contention it is to be said, first, that

the complaint does not allege negligence. So far as it relates to the injury to the mules, the complaint contains no more than the following. Referring to the alleged contract the pleader said:

"That the said contract provided that defendant should, and the defendant therein agreed to, take extra care of the said mules and equipment, and return the said mules to the plaintiff herein at its yard in the city of Los Angeles, in the county and state aforesaid, at the termination of the lease and hiring, in as good condition as when taken; that the defendant did not take extra care of the said mules and equipment, as provided in the said agreement, and did not return the said mules and equipment to the plaintiff in as good order as when received; that said mules, upon their return to the plaintiff as above set forth, were all of them in very poor condition, were emaciated and weak, and the plaintiff could not use nor let the said mules to be used, nor any of them, on account of such poor, weak, and emaciated condition, resulting from such lack of care as aforesaid, until the 1st day of June, 1913."

[2] The claim for damages for injury to the mules is therefore based upon an express agreement to exercise extra care. But there was no legal contract between the parties. And even if the allegations of the complaint were sufficient to charge negligence, the plaintiff could not recover damages therefor, for, in the absence of an express contract, the government is not liable for the negligence of its employés. In Robertson v. Sichel, 127 U. S. 507, 515, 8 Sup. Ct. 1286, 1290 (32 L. Ed. 203), the court said:

"The government itself is not responsible for the misfeasances, or wrongs, or negligences, or omissions of duty of the subordinate officers or agents employed in the public service; for it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs, since that would involve it, in all its operations, in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests."

So in Bigby v. United States, 188 U. S. 400, 407, 23 Sup. Ct. 468, 471 (47 L. Ed. 517), the court said:

"The government is not liable to be sued for the torts, misconducts, misfeasances, or laches of its officers or employés."

And, referring to the act of 1887, it further said:

"There is no reason to suppose that Congress intended to change or modify that rule. On the contrary, such liability to suit is expressly excluded by the act of 1887."

The plaintiff cites United States v. Bostwick, 94 U. S. 53, 24 L. Ed. 65, in which it was held that the United States, as lessee of real property, was under an implied obligation not to permit waste, nor, by its failure to exercise reasonable care, to permit it to be committed. But in that case there was an express contract of lease, and no question was raised as to the authority of the government officer to make it, and the relation between the lessor and the United States was that of landlord and tenant. The plaintiff relies, also, on certain expressions of the court in Clark v. United States, in which it was said:

"In the present case, the implied contract is such as arises upon a simple bailment for hire; and the obligations of the parties are those which are incidental to such bailment."

And the court went on to say that a bailee for hire—

"is only responsible for ordinary diligence and liable for ordinary negli-
gence in the care of the property bailed."

The question here, however, is whether the government became a
bailee for hire with the ordinary incidents of bailment, including re-
sponsibility for the negligence of its employés. What was said in
Clark v. United States on the subject of negligence was unnecessary
to the decision of the case which was before the court. The only ques-
tion was whether the government was liable to pay for the benefit
which it had received. The question of negligence was not involved,
for, as the court said:

"Negligence is not attributed to the employés of the government."

Section 3744 was intended, as was said in Clark v. United States,
to protect the government against pillage and fraud, and it is manda-
tory. It originally appeared in the act of June 2, 1862, c. 93, 12 Stat.
411, entitled:

"An act to prevent and punish fraud on the part of officers intrusted with
making of contracts for the government."

It being well settled that the government is not responsible for torts
of its employés, it cannot, we think, be made to answer for damages to
property unlawfully taken into the possession of its employés. There
is good reason why the government should pay for that which it actual-
ly receives and of which it retains the benefit through the unauthorized
act of its employés. But if it is to be held that the government is
bound to all the incidents of an implied contract in every case where
the oral agreement of its employés has been actually performed, what
becomes of the protection intended to be afforded by section 3744?

[3] The plaintiff asserts that, even if it is not in a position to recover
as upon a contract, express or implied, it is still entitled to recover un-
liquidated damages, since the statute gives a right of suit "for damages,
liquidated or unliquidated, in cases not sounding in tort," and that since
the original taking of the property was with plaintiff's consent, and
not a tortious act, the damages claimed do not sound in tort, citing
United States v. Cornell Steamboat Co., 202 U. S. 184, 26 Sup. Ct.
648, 50 L. Ed. 987, where it was held that a claim for salvage might
properly be said to be one for unliquidated damages in a case "not
sounding in tort," under the provisions of the Tucker Act. The diffi-
culty, however, is that the plaintiff's claim for damages as it is present-
ed to this court does sound in tort. It is a claim for damages for the
wrongful acts and negligence of the defendant's employés. "Causing
harm by negligence is a tort." Bigby v. United States, supra; Peabody
v. United States, 231 U. S. 530, 34 Sup. Ct. 159, 58 L. Ed. 351.

[4] The plaintiff contends that the defendant is liable for the dam-
ages caused by the taking and detention of the mules by the tax as-
sessor, and asserts that at the expiration of the term for which the
property was let, the defendant was bound to return the same to the
plaintiff at Los Angeles, that the mules were not taxable in Arizona,
and that the defendant wrongfully surrendered possession thereof to

the tax assessor. · The mules were in Arizona at the time of the levying of the annual taxes. The law of that state provides in plain terms that:

"All property of every kind and nature whatsoever within this state shall be subject to taxation." Civil Code, § 4846.

The fact that the owner of the taxed property resided in California was immaterial. The property was taxable where found. 37 Cyc. 799. Nor was the property exempt from taxation by reason of the fact that at the time when the tax was assessed, the property was on an Indian reservation or in the possession of government officials. Thompson v. Pacific Railroad, 9 Wall. 579, 19 L. Ed. 792; Baltimore Shipbuilding Co. v. Baltimore, 195 U. S. 375, 25 Sup. Ct. 50, 49 L. Ed. 242; Gromer v. Standard Dredge Co., 224 U. S. 362, 32 Sup. Ct. 499, 56 L. Ed. 801. A case very similar to the case at bar is United States v. Moses, 185 Fed. 90, 107 C. C. A. 310, in which it was held that the horses and harness of a contractor with the United States government, which, on the default of the contractor an officer of the government has taken for use in completing the contract, were not, in the absence of an act of Congress to that effect, exempt from taxation, the government having no ownership in the property. The court said:

"It is true that property in the lawful possession of the United States, and in which the United States has a property interest, may not be seized by any process issued under the authority of the state. In this case, however, the United States had no property interest in the property in question. It had a right to the possession of said property under the terms of the contract before quoted until the work required to be done by the Widell-Finley Company was completed and no longer. That work was completed, as stated, August 31, 1907. Its possession thereafter by Walter was for and on behalf of the Widell-Finley Company, and the mere fact that Walter was an officer of the United States, and claimed that his possession was for and on behalf of the United States, did not prevent its seizure by the sheriff as aforesaid. To render such seizure unlawful, it must appear that the officer had a legal right to hold and retain the possession of said property for and on behalf of the United States. A mere claim of right in the government is not sufficient."

We find no error. The judgment is affirmed.

DIETRICH, District Judge (dissenting). Upon one feature of the case I am unable to concur. It was expressly found by the court below that:

"They [the mules] were so negligently used, however, that the shoulders of some of them were bruised and their necks were made sore to an extent beyond what would have resulted, if proper care had been taken of them while they were being used in said work."

I am inclined to think that the appellant is entitled to recover as upon an implied contract for the loss it thus sustained through the government's failure to exercise reasonable care. United States v. Bostwick, 94 U. S. 53, 24 L. Ed. 65; Clark v. United States, 95 U. S. 539, 24 L. Ed. 518; St. Louis, etc., v. United States, 191 U. S. 159, 24 Sup. Ct. 47, 48 L. Ed. 130; United States v. Andrews & Co., 207 U. S. 229, 28 Sup. Ct. 100, 52 L. Ed. 185. The written instrument of agreement being invalid, the government, upon accepting the ap-

pellant's mules for use, impliedly agreed to take reasonable care of them and to pay the reasonable value of their use. In the absence of an express agreement to the contrary, such obligations are imposed upon all bailees for hire. Had the parties duly executed a written instrument fully complying with section 3744 of the Revised Statutes, in which, however, there was no express provision touching the care to be exercised by the government, it would still have been under the implied obligation to exercise a reasonable degree of care. The duty to pay the reasonable value of the use of the mules and the duty to take reasonable care of them are obligations of such a fundamental character that they do not fall within the scope of the evil sought to be remedied by section 3744. Both spring from the same source, and are of equal dignity, and I see no reason why one should be recognized and the other repudiated.

Nor am I able to take the view that the plaintiff's claim sounds in tort. If A. hires from B. a team of horses, and expressly agrees to take good care of them, the abuse thereof, either by him or his servants, constitutes a breach of the contract, upon which B. may bring his action for damages. Such a suit would be upon the contract. So here the plaintiff is suing the government for its failure to keep its implied contract to take reasonable care of the mules, of which it had possession with plaintiff's consent. Robertson v. Sichel and Bigby v. United States, cited in the majority opinion, are typical cases of wrongdoing by government officers or agents to third parties having no contractual relations either express or implied with the government. In such cases I very readily agree that the government cannot be held liable. In United States v. Bostwick, supra, there was no expressed agreement to take reasonable care of the leased premises, and yet the court held the government liable for the wrongful destruction of trees and fences and the digging and carrying away of gravel and stone, saying:

"But the implied obligation as to the manner of use is as much obligatory upon the United States as it would be if it had been expressed."

I am unable to see how the obligation there was any more clearly implied than it is here. So in Clark v. United States, supra, the inference is unavoidable that the government would have been held liable if the plaintiff's vessel had been lost through the negligence of government employés.