Hat, Judge,
delivered the opinion of the court:
This is a suit brought by the plaintiffs to recover the sum of $193,050 from the United States, the sum of $193,050 being the difference in the price of certain barges which the plaintiffs allege were sold to them by the United States Shipping Board and the price for which the said board afterwards sold the barges to other parties, the plaintiffs alleging that the board breached its contract with them by the sale of the barges to other parties.
It appears that the plaintiffs, after certain preliminary negotiations, did on the 5th day of December, 1919, make a proposal in writing to the United States Shipping Board to purchase twenty-two completed barges and five barges which were under construction at the price of $54,000 each for the completed barges, and to accept the five under construction as they were completed at the same price, the terms to be one-third cash on delivery of the bill of sale, one-third in six months, and the balance in twelve months; and the plaintiffs forwarded two cashier’s checks amounting to the sum of $25,000 as evidence of good faith.
The following provision was also in the offer to purchase:
“ It is understood that all the barges are in seaworthy condition, that reasonably prompt delivery of same will be made, and that during the life of this contract, should we desire to dispose of one or more of these barges, you will give us clear title to same upon payment of $54,000 for each barge so released, or upon the deposit with the board of acceptable security, at our option.”
On December 12, 1919, the Shipping Board considered this proposal to buy the said barges, and passed a resolution wherein it resolved that—
“ The offer of W. Bernard Duke to purchase, ‘ as is,’ all the 2,500-ton barges now owned or to be constructed by the *544 United States Shipping Board at a flat price of $54,000 each for the twenty-two completed barges, and for those now under construction on the same basis, as they are completed, the purchaser to assume existing commitments, be, and it hereby is, accepted on terms of one-third cash on delivery of bill' of sale, one-third within six months, and the balance within twelve months, with interest at five per cent on deferred payments; and that the bill of sale and other documents be passed upon as to form by the law department before the execution thereof.”
While the resolution above quoted purports to accept the offer of the plaintiffs, a reading of the offer and of the so-called acceptance discloses at once that the terms of the offer and the acceptance are different in several essential particulars. The offer does not propose to pay interest on the deferred payments; the acceptance requires interest to be paid on the deferred payments at the rate of 5 per cent per annum, making a difference of something like $50,000 in favor of the board. The offer recites that it is understood that all the barges are in seaworthy condition; the acceptance provides that the barges shall be taken by the plaintiffs, as they are; the offer provides for prompt delivery; upon this the acceptance is silent. The offer provides that if the plaintiffs should sell one or more of the barges the Shipping Board upon certain conditions should give the plaintiffs a clear title to the barges; the acceptance does not refer to-this part of the proposal. The acceptance also provides-that the plaintiffs shall assume existing commitments, a matter to which no reference is made in the offer of the plaintiffs.
The terms of the so-called acceptance and the terms of the offer are thus seen to be essentially different; and the acceptance being in terms varying from those of the offer is a rejection of the offer. The so-called acceptance of the Shipping Board could at best be only regarded as a counter-proposal which the plaintiffs had the right either to accept or to reject. But as a matter of fact the terms of this resolution of the Shipping Board were not communicated to the plaintiffs. They were advised by one W. L. Mercer by letter of date December 15] 1919, that “The United States Shipping Board has accepted your offer,” and in *545 tbat letter tbe plaintiffs were also advised that the deferred payments were to bear interest at 5 per cent per' annum. W. L. Mercer signed this letter “ acting manager ship sales.” To this letter the plaintiffs made no reply, and said nothing as to whether or not they would accept the modification of their offer with respect to interest on deferred payments. It will be observed that the other modifications made by the resolution of the board in the offer of the plaintiffs were not communicated to them.
On December 19, 1919, one week after th.e passage of the above recited resolution, the United States Shipping Board passed another resolution, whereby the resolution of December 12, 1919, was rescinded, and-provided further that the plaintiffs “be notified that their offer is declined and that the barges will be offered for sale to the highest bidder.” The plaintiffs were notified of this action of the board. They protested against this action of the board and vigorously insisted that their offer had been accepted and that there was a complete contract between them and the board. This the board denied and on the llth day of January, 1920, twenty-six of the barges were sold at the price of $61,150 each.
The plaintiffs complain that the United States Shipping Board has breached its contract with them, maintaining that the contract was complete when' the board passed the resolution of December 12, 1919. We can not assent to this view. The resolution of the board did not accept the offer of the plaintiffs in the terms of the offer. On the contrary, it varied the terms in essential particulars, and by so doing rejected the offer. Nor did the board communicate to the plaintiff the terms of its rejection of the plaintiff’s offer, but one week after it had rejected the offer by the terms of its resolution of December 12, 1919, the board rescinded that resolution and notified the plaintiffs that their offer of December 5, 1919, was declined. The court can not out of these circumstances infer that a contract was consummated between the parties. The rules of law governing such cases are well settled.
*546 “ A proposal to accept, or an acceptance, upon terms varying from those offered, is a> rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification sugK' jd.” Minneapolis & St. Louis Ry. v. Columbus Rolling Mill, 119 U. S. 149, 151. See also National Bank v. Hall, 101 U. S. 43, 50.
In the case at bar it is not pretended that the plaintiffs assented to the modification of the offer made by the board. In fact, they could not have done so, as they were not made acquainted with the modifications made by the board. Indeed, the facts of this case disclose that the plaintiffs made an offer to the Shipping Board, which offer was never accepted but was rejected, and the plaintiffs were notified of that fact. The fact that W. L. Mercer stated to the plaintiffs that their offer was accepted is immaterial; it was not in his province to interpret the meaning of the action of the board.
It is not necessary, in our view of the case, to pass upon the value of the barges. However, it may not be amiss to remark that there is no evidence showing what was the market value of the barges at the time they were to have been delivered to the plaintiffs.
The petition of the plaintiffs must be dismissed. It is so ordered.
Graham, Judge; DowNet, Judge; and Campbell, Chief Justice, concur.