**CORONA COAL CO. v. DAVIS, Director General of Railroads, etc. (three cases).**

Circuit Court of Appeals, Fifth Circuit.
July 26, 1927.

Nos. 4722, 4778, 4779.

1. Railroads &#61;5½(38)—Suits based on causes of action arising out of President's operation of railroads held maintainable against Director General as agent (Transportation Act 1920, § 206 [a] being Comp. St. § 10071¼cc).

Suits under the Transportation Act of 1920, based on possession, use, and operation by President of railroads of carriers, of such character as prior to federal control could have been brought against carrier, *held*, under section 206 (a), being Comp. St. § 10071¼cc, maintainable against Director General of Railroads as agent for the President.

2. Railroads &#61;5½(3)—Carriers' contracts for supplies and services were frustrated by governmental action in taking over control of railroads.

Governmental action in taking over control of railroads rendered impossible performance of contracts by carriers for supplies and services, with result that such contracts were not kept alive and appropriated by government, but were frustrated or ended.

3. Railroads &#61;5½(3)—Contracts with carriers expressed terms on which coal was furnished Railroad Administration after federal control.

Where coal company furnished coal in accordance with contracts with carriers after taking over all railroads by government, and the Railroad Administration accepted it, such contracts with carriers expressed terms on which coal was furnished and was to be paid for.

4. Railroads &#61;5½(39)—Company refusing to furnish coal under contract with carriers after federal control could maintain action for deliveries on requisitions of Fuel Administration (Transportation Act of 1920, § 206 [a], being Comp. St. § 10071¼cc; Federal Control Act [Comp. St. § 3115¾a et seq.]).

Where coal company, having contracted with railroad to furnish coal, supplied coal after taking over of railroads by government for some months, and thereafter refused to furnish coal, except for higher price, and Fuel Administration requisitioned coal without prejudice to right to assert claim against Railroad Administration, company was entitled to maintain an action under Transportation Act 1920, § 206 (a), being Comp. St. 10071¼cc, for balances for coal delivered pursuant to requisitions of Fuel Administration, in that government did not succeed to rights of carrier under such contract, in absence of agreement relative thereto; Federal Control Act (Comp. St. § 3115¾a et seq.) not making such contracts binding on Railroad Administration.

**5. Contracts ⊜►10(1)—Mere part performance, not binding on parties, does not make contract binding so far as it remains executory.**

Mere part performance of contract, which is not binding on parties, does not make it binding so far as it remains executory, but makes it binding only to extent performed, leaving it unenforceable so far as it remains executory, unless made binding by mutual promises of parties.

Foster, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

In Error to the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Three separate suits by the Corona Coal Company against James C. Davis, Director General of Railroads, and by the Corona Coal Company against James C. Davis, as Agent for the President of the United States. Judgment of dismissal (8 F.[2d] 297), and plaintiff brings error. Reversed and remanded.

Richard B. Montgomery, of New Orleans, La., and Forney Johnston, of Birmingham, Ala., for plaintiff in error.

J. Blanc Monroe, Monte M. Lemann, and Walter J. Suthon, Jr., all of New Orleans, La., Albert S. Bozeman and Ben F. Cameron, both of Meridian, Miss., and Harry McCall, George Denegre, Victor Leovy, Henry H. Chaffe, and James Hy. Bruns, all of New Orleans, La., for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The plaintiff in error, Corona Coal Company (herein called the Coal Company), brought three suits against James C. Davis, as Agent for the President under the Transportation Act of 1920 (41 Stat. 456), for balances alleged to be due for coal delivered to the Railroad Administration during the period of federal control. Some time prior to December 26, 1917, the date of the passing of railroads into control of the government, the Coal Company had entered into contracts with three railroad companies (herein called carriers) to supply them with specified minimum or maximum amounts of coal for specified periods of time and at stated prices; the period named in two of the contracts expiring July 1, 1919, and the period named in the other contract expiring June 15, 1919, with option of purchaser to cancel January 1, 1919, or April 1, 1919. For several months after federal control began the Coal Company supplied coal pursuant to the contracts, and received from the Railroad Administration the contract prices therefor. Upon the Coal Company refusing to continue to furnish coal, except for a higher price, the Fuel Administration, in November, 1918, requisitioned the coal called for by the contracts "without prejudice to your [Coal Company's] right to assert a claim against the Railroad Administration or these various railroad companies" for any amount claimed to be legally payable. Thereafter the Coal Company furnished coal pursuant to such requisitions, and the Railroad Administration paid the prices fixed by the contracts, asserting that these were the measure of its liability. The general price for coal theretofore fixed by the Fuel Administration was more than the contract prices, and the suits were for the difference.

In two of the suits the court sustained exceptions to the petitions and dismissed them. In the other case the court sustained a demurrer to a replication to defendant's special plea, and, upon plaintiff declining to make further answer to said special plea or to plead further, dismissed the suit. Averments of that special plea show that a contract between the Director General of Railroads and the carrier, entered into in February, 1919, provided that the Director General should, at his option, be substituted, for the period of federal control, in the place of the carrier in respect of the benefits and obligations of contracts relating to operation in force January 1, 1918. The three cases were argued and submitted together in this court.

[1] Under section 206 (a) of the Transportation Act of 1920 (41 Stat. 461), being Comp. St. § 10071¼cc, the suits were properly brought against the defendant in error, if they were based on causes of action arising out of the possession, use, or operation by the President of the railroads of the carriers of such character as, prior to federal control, could have been brought against those carriers. If the Coal Company, pursuant to lawful requirement, had supplied coal to the carriers, for the use of the latter in operating their railroads, without prejudice to a right of the Coal Company to be paid for such coal more than the carriers paid therefor, the Coal Company, if it was entitled to be paid more for such coal, would have had causes of action against the carriers for the difference. It follows that the suits of the Coal Company, asserting such causes of action, were maintainable against

the defendant in error. Corona Coal Co. v. United States, 263 U. S. 537, 44 S. Ct. 156, 68 L. Ed. 431; Davis v. Newton Coal Co., 267 U. S. 292, 45 S. Ct. 305, 69 L. Ed. 617.

When the above-mentioned requisitions of the Fuel Administration were made and compliance therewith was begun, there had been no semblance of an assignment by the carriers to the Railroad Administration of the rights of the former under the contracts. This being so, it is not material to inquire whether the government could by assignment or transfer have acquired the rights of the carriers under the contracts.

[2] The proclamation of the President establishing federal control of railroads did not purport to have the effect of a taking over by the government, in addition to the physical properties constituting the railroads of the carriers, of the rights and obligations of the carriers under contracts made by them for supplies and services. This lawful governmental action rendered impossible performance of such contracts by the carriers, with the result that those contracts were not kept alive and appropriated by the government, but were frustrated or ended. Omnia Commercial Co. v. United States, 261 U. S. 502, 43 S. Ct. 437, 67 L. Ed. 773; Brooks-Scanlon Corp. v. United States, 265 U. S. 106, 44 S. Ct. 471, 68 L. Ed. 934; Hines v. Dahn (C. C. A.) 267 F. 105.

[3-5] The price of coal fixed by the Fuel Administration being higher than the prices stated in the contracts, the Railroad Administration was not entitled to get the coal at the contract prices, unless it acquired that right by a contract or contracts binding on it. The rulings under review were sought to be supported by the contention that the dealings between the Coal Company and the Railroad Administration during several months after federal control began—the former without objection furnishing coal called for by the contracts and accepting the contract prices therefor, and the latter taking the coal so furnished and paying the contract prices—had the effect of reviving the frustrated contracts between the Coal Company and the carriers and converting them into contracts between the Coal Company and the Railroad Administration.

It is not to be doubted that so long as, without any express agreement between them as to quantities, prices, etc., the Coal Company furnished coal as called for in the contracts and the Railroad Administration accepted it, the contracts expressed the terms on which the coal was furnished and was to be paid for. St. Louis Hay, etc., Co. v. Unit-

ed States, 191 U. S. 159, 163, 24 S. Ct. 47, 48 L. Ed. 130. But so far as the contracts remained executory the instruments evidencing them show that the Coal Company's only promises as to furnishing coal were to make, throughout stated periods, specified deliveries at stated prices to the carriers contracted with, and that the only consideration supporting those promises were the promises of the carriers to take the coal furnished pursuant to the contracts throughout the period stated in the contracts and to pay the stated prices thereof. In the absence of an agreement between the Coal Company and the Railroad Administration that the latter take the place of the carriers under the contracts, those contracts, so far as they remained executory, did not become contracts between the Coal Company and the Railroad Administration.

Under the rule as to mutuality the Coal Company was not obligated to the Railroad Administration to furnish coal for a definite period unless the Railroad Administration became obligated to the Coal Company to accept the coal and pay the contract prices throughout the periods stated in the contracts. Mere part performance of a contract which is not binding on the parties does not make it binding so far as it remains executory. Part performance makes it binding only to the extent it was performed, leaving it unenforceable so far as it remains executory, if it has not been made binding by mutual promises of the parties. Willard, Sutherland & Co. v. United States, 262 U. S. 489, 43 S. Ct. 592, 67 L. Ed. 1086; Miami Coca-Cola Bottling Co. v. Orange Crush Co. (C. C. A.) 296 F. 693; Schlegel Mfg. Co. v. Peter Cooper's Glue Factory, 231 N. Y. 459, 132 N. E. 148, 24 A. L. R. 1348, and note.

When by the Fuel Administration's requisitions the Coal Company was required to resume and continue deliveries to the Railroad Administration, the period for which federal control of the railroads would continue was wholly indefinite. No one knew whether it would or would not continue throughout the periods covered by the contracts. No action taken by the Railroad Administration manifested its consent to be obligated to take and pay for coal pursuant to the contracts throughout the periods stated therein. The record does not show that the Coal Company offered to furnish coal to the Railroad Administration at stated prices during the period stated in the contracts or during any definite period, or that the Railroad Administration accepted such an offer, or promised to take and pay for coal furnished during

any definite period. It is not disclosed that the Railroad Administration made any promise or incurred any obligation which would have been breached by its refusal, before or after federal control ended, to continue its acceptance and payment for coal furnished by the coal company. The record does not show that there was a meeting of the minds of authorized representatives of the Coal Company and of the Railroad Administration as to a period during which the former would furnish and the latter would accept and pay for coal at prices mutually agreed on. The fact that during several months after federal control began the Railroad Administration accepted coal furnished by the Coal Company and paid the prices stated in the contracts with the carriers did not import an agreement or consent of the Railroad Administration to continue to do so for any definite time.

The fact that the Railroad Administration, by contracts entered into in 1919 between it and the carriers, as authorized by the Federal Control Act (Comp. Stat. 1918, § 3115¾a et seq.), acquired the option to be substituted for the period of federal control in the place of the carriers in respect of the benefits and obligations of designated classes of contracts, did not have the effect of making the above-mentioned contracts, which by frustration ceased to exist in December, 1917, binding on the Railroad Administration in 1918 when the Coal Company, by the requisitions of the Fuel Administration, was required to continue furnishing coal as above stated. The contracts, so far as they remained executory, could not become binding as between the Coal Company and the Railroad Administration without the making of reciprocal promises, there being no other consideration to support a promise of the one to the other. The meeting of the minds of the parties to be bound by such promises cannot be inferred, in the absence of intelligible conduct or dealings between them manifesting their consent to be bound for the definite periods stated in instruments which evidenced contracts which had ceased to exist while they remained in part executory. Baltimore & Ohio R. Co. v. United States, 261 U. S. 592, 43 S. Ct. 425, 67 L. Ed. 816.

What has been said is perhaps more than enough to indicate the grounds of the conclusions reached that the Railroad Administration was not entitled to the coal at the prices it paid after the Coal Company resumed deliveries pursuant to the requisitions of the Fuel Administration, and that the records show that, when the suits were brought balances for such coal were owing to the Coal Company, for the recovery of which the suits were maintainable.

The judgments are reversed, and the causer are remanded for further proceedings not inconsistent with this opinion.

Reversed.

FOSTER, Circuit Judge, dissents.