Williams, Judge,
delivered the opinion of the court:
This is a suit brought by the Rocky Brook Mills Company to recover upon what is alleged to be a “ contract in writing ” with the United States entered into April 20, 1918, under which the plaintiff undertook to furnish and deliver to the United States Army 50,000 blankets, and which contract, it is alleged, was breached by the United States on June 20, 1918, with consequent loss to the plaintiff.
It is not contended that the plaintiff delivered or tendered any blankets to the Government, or is entitled to recover as upon quantum meruit. The damages claimed are alleged to have accrued to the plaintiff by reason of the cancellation of the contract by the Government prior to the specified time for delivery of the blankets. The damages claimed consist of anticipated profits which the plaintiff insists it would have made had the contract not been canceled, and of loss due to the purchase of a mill site and the installation of machinery therein necessary to enable the plaintiff to manufacture the blankets in question.
The basic question in the case is whether or not there was in existence at the time of the alleged “ cancellation,” a contract between the parties upon the breach of which damages *655 •can be assigned. If there was no contract, obviously there could be no breach. Under the statutes of the United States, a claim for damages as based upon the refusal of the Government to accept performance by the plaintiff, must be grounded upon a contract in writing, signed by both the parties thereto. Section 3744, U. S. R. S.; St. Louis Hay & Grain Co. v. United States, 191 U. S. 159; Clark v. United States, 95 U. S. 539; South Boston Iron Co. v. United States, 118 U. S. 37.
While it has been held that such a contract need not in all cases be embodied in one instrument, signed by both parties at the end thereof (Swift & Co. v. United States, 270 U. S. 124), it has been uniformly held that in the absence of an acceptance by the Government of something of value under the contract for which it can be held liable quantum meruit, there must be a writing, or writings, signed by the parties, to sustain a claim of the character of the claim involved in this suit. Johnston v. United States, 41 C. Cls. 76; Gillespie v. United States, 47 C. Cls. 310.
It is indispensable that there must be shown, at some point, to have been a written acceptance of a written offer, and that the acceptance must be within the terms of the original offer, that it must be by the offeree, to whom the offer was made, and must be communicated to the offeror prior to the withdrawal of the .offer. American Smelting & Refining Co. v. United States, 259 U. S. 75.
In our opinion the plaintiff in this suit has wholly failed to establish such a contract. It is clear that the instrument designated by the plaintiff as a “ contract in writing,” a copy of which is appended to the petition filed herein and which is designated in the petition as the “ contract in writing ” upon which the plaintiff relies for recovery, is not such a contract for the reason that it was never signed by any person acting, or claiming to act, for the United States.
This writing was prepared in the office of Colonel H. J. Hirsch, of the Quartermaster Corps, in Washington, D. C., and mailed on April 24,1918, to Eocky Brook Woolen Mills, with a letter of transmittal requesting that it be executed by said Eocky Brook Woolen Mills and returned to the Gov *656 ernment for approval and signature. When mailed on April 24, 1918, the contract was not signed or executed by anyone. It did not purport to be a contract between the Government and the plaintiff, but between the Government and Rocky Brook Woolen Mills. The plaintiff corporation was not a party thereto, its name nowhere appears in, or on, the instrument, and, as a matter of fact, the plaintiff corporation was not in existence, it being subsequently, on April 30, 1918, granted a certificate of incorporation by the State of Rhode Island.
All of the facts in regard to the subsequent handling of the agreement are not perfectly clear, but it is satisfactorily shown and we have found that (1) the agreement was never executed by the Rocky Brook Woolen Mills, (2) that at least up to June 24, 1918, a date which is important in view of another contention of the claimant, it had not been signed by the plaintiff, (3) that it was not formally acted upon by the board of directors of the plaintiff corporation until August 3, 1918; (4) that when the agreement was returned to the Government the word “ Woolen ” had been erased from the name “ Rocky Brook Woolen Mills ” and the word “ Company ” written in, to make the contract read “ Rocky Brook Mills Company,” all without the consent or authority of the Government, and (5) that the agreement was never signed by any person for the United States and was returned to the plaintiff on August 12, 1918, unexecuted, with a letter calling the attention of the plaintiff to the fact that the agreement had been canceled, and the plaintiff so advised, on June 20, 1918. Under these facts the instrument can not be said to be a “ contract in writing ” within the meaning of the statute, and there can be no recovery thereon. Section 3744 U. S. R. S.
It is argued that the typewritten words—
“H. J. Hiesci-i,
“ Colonel, Quartermaster Corps, U. 8. A.
“ By _
“ Captain, Q. M. R. G.”
in fact constituted a “ signature,” and that a signature may be affixed by typewriter as well as by use of pen and ink. Without being understood as holding that in a proper case *657 a signature might not be affixed by use of a typewriter, as well as by other method, we think it is clear that the typewritten name “ H. J. Hirsch ” was not so affixed in this case. The blank line left for the signature of the officer actually to sign the document shows that the execution was incomplete. The typewritten name “ H. J. Hirsch ” and the other words following it were nothing more than a formal conclusion of the contract, making the document ready for signature, and not constituting a signing of the contract. A typewritten name will not be held to be a signature unless there is some showing made that it was in fact intended to be a signature. Tabas v. Emergency Fleet Corporation, 9 Fed. (2d) 648. No such showing has been made in this case and the plaintiff’s contention upon this point can not be sustained.
But it is argued that, even if the contract of April 20, 1918, above discussed, was not executed by the Government, a “ contract in writing ” existed by virtue of a so-called “ letter of award ” or “ award of contract,” also dated April 20, 1918, and signed by H. M. Schofield, a captain in the Quartermaster Corps, for Colonel H. J. Hirsch, the purchasing and contracting officer of the Quartermaster Corps, and by the subsequent acceptance thereof by the plaintiff. The so-called award was a letter dated at Washington on April 20, 1918, from Colonel Hirsch, addressed to “ Rocky Brook Woolen Mills,” entitled “Award of contract ” and set out verbatim in the second finding of fact. A copy of this letter was delivered to Richard L. Broome, on the day of its date, by Captain Schofield, and the original mailed to Rocky Brook Woolen Mills, and an acknowledgment of its receipt requested. On April 29,1918, Rocky Brook Mills Company, by Broome, its president, acknowledged receipt of the letter and said, among other things, “We are taking care of the matter of the performance bond and will get it in shape at the earliest possible moment.” On the same day (April 29, 1918) the contracts branch of the Quartermaster Corps sent to Rocky Brook Woolen Mills, in triplicate, the contract above mentioned, with a letter entitled “ Contract papers 2085-B for execution ” and enclosing a form of performance *658 bond in the amount of $40,000, in duplicate. The letter said in part: “ Please have these papers properly executed * * *. All the papers should be forwarded to this office at the earliest practicable date for approval and completion of signatures. * * * ” Keceipt of this letter was not acknowledged, the performance bond referred to was never furnished, and nothing further appears to have been done in regard to the execution of the contract until some time subsequent to June 24, 1918.
On June 14, 1918, the Acting Quartermaster General wired to Kooky Brook Woolen Mills, referring to the contract in question, “Have you received same if so execute papers immediately * * * ” to which wire the plaintiff replied by letter of June 24, 1918, “ Your telegram received and we regret that we have not been able to sign the contract and return to you before this time * * * ”, and saying further that the plaintiff was unable to furnish bond on account of some defect in the title to its property. The plaintiff did not execute or return the agreement until some time after June 24, 1918.
In the meantime, the depot quartermaster of the Boston, Massachusetts, territory, had caused an inspection of the plant and property of the plaintiff to be made. On May 28, 1918, the mill site was visited and inspected by Captain Abbott Stevens, who reported to his superior officer as follows: “ There is no machinery or shafting of any description in this mill; the roof is partly completed; the foundation for the weave room has just been started; the dyehouse has not yet been started; the floors have not been laid; only a few window frames are in place.” On May 29, 1918, the depot quartermaster forwarded this report to the supply and equipment division of the Quartermaster Corps at Washington, adding that the inspecting officer requested “that the facts be further investigated, as it was not believed that a satisfactory product would be obtained from the mill for at least three months after the time of delivery stated in the contract.” The report went through the woolens branch of the clothing and equipment division at New York, which branch recommended that “ in view of the circumstances * * * detailed, it is recommended that this contract be *659 cancelled.” This recommendation was made on June 15, 1918. By letter dated June 20, 1918, mailed June 22, 1918, the Quartermaster Corps, by Colonel Hirsch, contracting officer, gave formal notice to Rocky Brook Woolen Mills that (referring to the contract in question) “ the said award of contract is hereby cancelled.” The plaintiff acknowledged receipt of this letter on June 25, 1918, but did not consent to the cancellation, saying that it could and would deliver the blankets “ as per our contract deliveries even if it is necessary to have them made for us elsewhere.”
The question presented is whether or not there was such a written offer and an acceptance thereof as constituted a contract in writing within the meaning of the statute. It is unnecessary to pass upon the question as to whether the letter of award, dated April 20,1918, was such an offer as could be turned into a binding contract by acceptance by the plaintiff. It might well be argued that the letter was merely a preliminary step, evidencing the willingness of the Government to deal with the plaintiff, if and in the event a satisfactory contract was subsequently entered into. The fact that the letter itself referred to a contract which was to be prepared later, and did not purport to contain all of the terms of the agreement, creates a strong presumption that the letter itself was not intended to be the contract. South Boston Iron Co. v. United States, supra.
But taking the view urged by and most favorable to the plaintiff that the letter of award constituted a binding offer, needing only acceptance by the plaintiff to constitute a binding contract in writing, and passing entirely the question as to how an offer made and addressed to Rocky Brook Woolen Mills, at a time when the plaintiff was not in existence, could be “ accepted ” by the plaintiff without the consent of the party making the offer, the plaintiff has still failed to show a valid acceptance of the offer prior to its cancellation. The plaintiff had not accepted the offer, and was still unable to furnish the bond required, on June 24, 1918. It was too late to accept the offer on June 25, 1918, after the receipt of the notice of cancellation from the Government.
It is insisted that the inspector’s report of the condition of the plaintiff’s mill of May 28, 1918, did not truly reflect *660 the physical condition of the property, and that the plaintiff would have been able to perform the contract had it not been canceled by the Government. It is argued that the inspector was not wholly disinterested and that his family operated ■other and competitive mills in the vicinity of the plaintiff’s mill; that the cancellation was not justified and was premature. The contention is wholly without merit. A subsequent inspection of the property on August 31, 1918, more than a month after the first deliveries of blankets would have been due, showed that the mill was not yet ready for operation. There is nothing in the record to show that the Army officer acted otherwise than fairly and honestly in the performance of a routine inspection to which all mills with which the Government had or expected to have dealings were regularly subjected, and the court will not indulge in ■any presumption that his very remote and slight interest in some -other mill affected his report.
So long as the offer remained wholly executory, it was the right of the Government to withdraw it with or without cause. Duke v. United States, 57 C. Cls. 535.
The cancellation was amply justified in this case. The plaintiff, having admitted as late as June 24, 1918, that it had not yet acquired title to its property and was unable to furnish a performance bond, was hardly in position to expect the Government to rely upon it for war materials scheduled for delivery a few weeks later.
It is insisted that the Government recognized the “Award ” .as a .contract and treated it as such, and is now estopped to deny the existence of the agreement or to question its validity. This contention grows out of the sale by the wool top and yarn branch of the Quartermaster Corps of the Army, on June 12, 1918, of a quantity of wool-top yarn, under an agreement executed by the plaintiff corporation and accepted for and on behalf of the United States by Captain Desmond of the Quartermaster Corps. This agreement contains a recital: “ That the wool shall be used in the fulfillment of Government contract No. 2085-B, •dated April 20, 1918, with Kocky Brook Mills Co., but in the event the above Government contract is cancelled the Government shall have the right to specify how the wool is *661 to be used.” It is argued that this is a contract in writing, and that it by implication recognized and ratified the award of the contract of the same number, and made unnecessary the execution of the contract itself. We do not believe that the agreement can be so construed. The wool purchase and sale contract does not purport to have anything whatever to do with the former contract, or to waive the necessity of the execution thereof. Nor does it purport to incorporate the terms of the other contract by reference or otherwise. It has to do with one subject only, namely, the sale of certain wool by the Government to the plaintiff. The officers executing it can not be presumed to have undertaken to go out of the line of the performance of the duties assigned to them and to have contracted for something not referred to in the contract or to have intended, by ratification or otherwise, to have entered into a contract for the purchase, by the Government, of blankets.
Their power to bind the Government was clearly limited to acts within the scope of their authority as officers; they could not have validated the original contract by executing it directly, and their indirect recognition of the agreement can not be held to have any greater force than a direct attempt to execute the agreement would have had.
It. is also to be noted that there is no language in the wool-purchase contract even purporting to validate the former contract but that on the contrary, the possibility that the original contract might be canceled by the Government was specifically mentioned.
The plaintiff well says that the Government should not execute a contract with its citizen, lead it to rely upon the contract and, without just cause, cancel the contract, thereby causing loss to the contractor. But in this case the losses claimed to have been sustained by the plaintiff are not due to reliance by it upon an executed contract with the Government, but to its assumption that it would be able to obtain and ultimately to perform such a contract with profit to itself. So long as no contract was in fact entered into the plaintiff could not have been required to take any steps toward fulfillment of the contract, and if it did so in this case, must be held to have assumed the risk that the con *662 tract would be obtained. The loss is not due to the fact that the Government canceled a contract, but to the fact that, in apt time, it withdrew is offer to enter into one.
There is yet an additional reason why the plaintiff can not recover. It is pointed out on behalf of the Government that there is no competent evidence in the record establishing any proper measure of the plaintiff’s damages. With this contention we are in full accord. It is not shown that the plaintiff ever made a definite election to treat the cancellation as a breach of the contract. It appears that it attempted to treat the cancellation as inoperative and to keep the contract alive. In such a case the limit of the .recovery of the plaintiff is the difference between the contract price and the open market price of the article sold. Southern Cotton-Oil Co. v. Heflin, 99 Fed. 339; Roehm v. Horst, 178 U. S. 1.
There is no showing that the contract price exceeded the market price of the blankets at the times specified for delivery. Such proof was necessary to establish any competent measure of damages. Furthermore, there is nothing in the record upon which even an estimate of the amount of the loss of the plaintiff directly chargeable to the alleged cancellation complained of could be made. The expenditures of the plaintiff for a mill site, for the remodeling of the plant, and for the purchase of equipment and machinery were in the nature of capital investments. They were not incurred in the manufacture of the blankets mentioned in the contract, but in the building and equipment of a mill in which the plaintiff hoped blankets could be manufactured. They do not constitute an allowable measure of damages for breach of a contract such as the contract involved in this case.
The plaintiff’s claim for anticipated profits can not be sustained by proof of the manufacturing costs of another mill, operating under different conditions, and in nowise comparable to the plaintiff’s mill which was not constructed, had no organized labor force, and was without an ascertained and tested management. A judgment against the United States is not to be based upon a computation arrived at by conjecture or speculation. Maryland Casualty Co. v. *663 United States, 53 C. Cls. 81; Standard Steel Car Co. v. United States, 61 C. Cls. 445.
Under the facts shown the plaintiff is not entitled to> recover and its petition will be dismissed. It is so ordered..
Littleton, Judge; Geeen, Judge; and Booth, Chief Justice, concur.
Whaley, Judge, did not hear this case and took no part, in its decision.